# Exhibit 18

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

23823 MALIBU ROAD, SUITE 50-363
MALIBU, CALIFORNIA 90265

Tel: (310) 246-3333 / Fax: (310) 246-3101
jparkkinen@toberoffandassociates.com

June 8, 2022

Via Email

Molly M. Lens
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

**RE:** *Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-07955-LAK; *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK; *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv- 07959-LAK; *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316-DG-TAM; and *Marvel Characters, Inc. v. Rico*, No. 2:21-cv-07624-DMG-KES

Dear Molly:

We write in response to your June 1 and June 8 letters and to follow up on various discovery items.

To begin, however, we note that we find much of your June 1 letter to be extremely unreasonable, and legally unsupported. For example, Marvel propounded its Second Set of Interrogatories to Defendants on June 1 but, with no supporting authority, "requires" Defendants to respond by June 10 (nine days later). Still further, Marvel notes that it "does not agree that these interrogatories count against Marvel's limit" thus attempting, again without authority, to exempt such interrogatories from the 25-interrogatory limit set by the Federal Rules.

These, and many of the other demands Marvel makes, have no basis in the Federal or Local Rules. Marvel is demanding things which, as you know, are not required and which Marvel itself has not done, nor would you advise Marvel to do. Defendants and Subpoenaed Parties have and will continue to abide by and be guided by the Federal and Local Rules. We request that Marvel stop making what are plainly unreasonable demands designed to waste time and harass Defendants and Subpoenaed Parties.

Please note that we decline to correct each one of your letters' hyperbolic mischaracterizations. Marvel's repeated and colorful depictions are inaccurate and tiresome and neither Marvel's casting them nor Defendants' correcting them is not a good use of counsels' time or resources. Please restrain your future communications accordingly.

**TOBEROFF & ASSOCIATES, P.C.**

June 8, 2022
Molly M. Lens
Page: 2

### *Kirby* Productions

We agree with the latter of Marvel's proposals, which, to be clear, we understand to mean that: (1) Marvel will produce the full extent of its *Kirby* documents, regardless of their original source (i.e., from Marvel, the Kirbys, or a subpoenaed party); (2) Defendants and the Kirbys will then identify the bates ranges of any *Kirby* documents in their files that Marvel has not produced; and (3) Defendants and the Kirbys will refrain from producing any further *Kirby* documents until Marvel has advised Defendants that it has completed its production of *Kirby* documents. Please confirm Marvel's agreement.

### Marvel's Production

Marvel now claims to have produced its documents as they are kept in the usual course of business, but this is not so. For example, it is difficult to believe that Marvel's normal course of business is to store a single copyright assignment in ninety-nine separate TIFF files. *See e.g.*, 2021MARVEL-0008103 - 2021MARVEL-0008202. Because Marvel clearly had not produced documents as they were usually stored, it appeared that Marvel instead intended to produce documents, choosing to label them in its spreadsheets in some effort to comply with its obligations under the Federal Rules. *See* F.R.C.P. 34(b)(2)(E)(i) ("A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request"). If Marvel is not labeling its documents and is not, as we have shown, producing documents as they are stored in the normal course of business, then Marvel is not in compliance with the Federal Rules.

We therefore again ask that Marvel confirm that it will supplement its spreadsheet (XREF_2021MARVEL-PROD003) to provide coherent file names so as to bring Marvel's production in compliance with the Federal Rules by properly organizing and labeling them.

Consistent with its discovery obligations and its agreement to do so, we also request that Marvel produce a privilege log for any documents withheld from its first two productions which were made more than 30 days ago and for which no logs have been produced. Alternatively, please confirm that no documents (such as, for example, communications between Marvel and you regarding your firm's potential representation) have been withheld.

### Defendants' Production

As we have explained in nearly each one of our telephonic meet-and-confer discussions, most of Marvel's RFPs seek documents from the 1960s and 1970s and Defendants simply do not possess a large number of fifty and sixty-year-old documents. Moreover, with the exception of Larry Lieber (himself a ninety-year-old man), Defendants are surviving relatives of the deceased creators in question and have inherited few, if any, documents from those creators.

Marvel's concerns about the size of Defendants' productions are due to Marvel's willful refusal to consider the realities of Defendants' positions. For example, Marvel is touting the quantity of Defendants' productions as though it is evidence of some impropriety. However, in case Marvel was not aware, Nanci Solo and Erik Colan are the children of Gene Colan, both of whom were very young during

**TOBEROFF & ASSOCIATES, P.C.**

June 8, 2022
Molly M. Lens
Page: 3

the relevant periods. Keith Dettwiler is merely the nephew of Don Heck and the executor of Heck's estate, as one of few surviving heirs, whose uncle died thirty years ago. Patrick Ditko is the brother–not the son, as Marvel's June 1 letter misstates–of the famously reclusive Steve Ditko. Accordingly, as one would expect, Defendants have few responsive documents from their relatives, never mind documents from the 1960s and 1970s. Notably, Marvel, a large company with recordkeeping systems, has itself claimed that it does not have many records from the 1960s and 1970s. So, it is unclear why Marvel expects that Defendants would. Considering the age of the documents requested and the distant relation between the Defendants and the creators, there is nothing unreasonable about Defendants' productions. In fact, it was unexpected and remarkable that Defendants were able to unearth some of the things produced to date.

In addition, to the extent they exist, locating documents from the 1960s and 1970s is no simple task. Due to their age, such searches are necessarily physical rather than electronic. Marvel itself acknowledged the challenge of physical searches for documents when it refused to make them. *See* Marvel's April 19, 2022 Letter ("MCI, however, will nevertheless also agree to produce any vouchers that it identifies through *electronic* searches associated with the Defendant Contributors' names, but will not agree to undertake the burden to search for other vouchers.") (emphasis added). Notwithstanding these difficulties, Defendants continue in their diligent collection and review efforts.

As to your question about Defendants' privilege log, the log noted that the date of the document was "Unknown" because the document was not dated. While we again note that Marvel has produced no privilege log whatsoever and has stated no intention to do so, Defendants, conversely, plan to produce an up-to-date privilege log in due course.

### Subpoenas to Mark Ditko and James Steranko

Served with this letter is a courtesy copy of Mark Ditko's amended RFP responses. Additionally, Mark Ditko has already produced his communications with David Currie. *See* MARK.DITKO-0003 - MARK.DITKO-0041. We suggest Marvel first review the documents that have been produced before pressing Defendants or Subpoenaed Parties to confirm that already-produced documents will be produced. We further decline Marvel's invitation to gratuitously verify Mark Ditko's RFP responses and we note that the case Marvel cited and Federal Rule 26(g) do not establish any such obligation, nor has Marvel endeavored to verify any of its RFP responses.

As for James Steranko, searching for, collecting, and reviewing responsive documents is still in progress and we hope to make a production of documents soon.

### Marvel's Second Set of Interrogatories

Turning first to Marvel's peculiar and unwarranted May 11, 2022 letter seeking to confirm "in an abundance of caution" that Defendants were going to search for documents consistent with their RFP responses. Defendants suspected that Marvel's May 11 letter demanded answers to a lengthy list of pseudo-interrogatories in the hopes of extracting responses from Defendants without such interrogatories being counted against Marvel's 25-interrogatory Federal limit. We declined to indulge Marvel.

3

**TOBEROFF & ASSOCIATES, P.C.**

June 8, 2022
Molly M. Lens
Page: 4

    Confirming Defendants' suspicions, Marvel then served its Second Set of Interrogatories which mirrored the demands made by Marvel in its May 11 letter. Marvel's interrogatories were served along with the June 1 letter conceding Marvel's original intent. *See* Marvel's June 1, 2022 Letter (regarding Marvel's Second Set of Interrogatories: "Because these interrogatories are necessitated by defendants' conduct, Marvel does not agree that these interrogatories count against Marvel's limit.").

    As noted above, Marvel's Second Set of Interrogatories, along with Marvel's June 1 letter, groundlessly purport to "require" Defendants to confirm that they will respond by June 10 (nine days later) and asserts that Marvel "does not agree that these interrogatories count against Marvel's limit." We reject Marvel's attempt to create its own rules of civil procedure. Marvel's June 8 letter then changed course, noting that Defendants' responses are actually due on July 1. Accordingly, we ask that Marvel confirm that its Second Set of Interrogatories, in compliance with the Federal and Local Rules, (1) will count toward Marvel's 25-interrogatory Federal limit, and (2) Defendants will have thirty days to respond to Marvel's interrogatories per the Federal Rules (and the instructions in Marvel's Second Set of Interrogatories themselves). *See e.g.*, Plaintiff's Second Set of Interrogatories to Lawrence D. Lieber ("MCI requests that Lawrence D. Lieber respond under oath and in writing to each Interrogatory within thirty (30) days of service."). If Marvel refuses to confirm that its interrogatories were served in compliance with the Federal and Local Rules, Defendants will regard Marvel's Second Set of Interrogatories as a list of aggressive questions similar to Marvel's May 11 letter, to which no response is required. Alternatively, we request that Marvel withdraw these interrogatories within five days of receiving this letter.

    Additionally problematic, Marvel's Second Set of Interrogatories, which seek, among other things, information regarding Defendants' efforts to search for documents, are more practically answered in depositions. *See* Southern District of New York Local Rule 33.3(b). As such, we suggest that, should Marvel fail to withdraw its Second Set of Interrogatories, the parties' to-be-finalized agreement regarding a date certain for Marvel's responses to Defendants' First Set of Interrogatories be applied reciprocally to Defendants' responses to Marvel's interrogatories.

### Defendants' Interrogatory Responses

    Marvel's June 1 letter, like its May 24 letter, did not explicitly confirm whether it is Marvel's desire for Defendants to amend their interrogatory responses so that each response is based solely on each Defendant's personal knowledge alone. We have asked for several weeks now for Marvel to make this simple confirmation but Marvel repeatedly fails to answer, hedging, and causing unnecessary delay.

    Regardless, Defendants are committed to resolving this issue and will work to amend their interrogatory responses, basing those responses on each Defendant's personal knowledge and will provide verifications to that effect.

    Regarding Interrogatory No. 5, we are perplexed by Marvel's demand that Defendants must produce interviews hosted by third parties on YouTube. Not only is such an interview not in the "possession, custody, or control" of any of the Defendants, but the parties have already agreed that Marvel nor Defendants would be required to obtain possession of a public document to which both had

**TOBEROFF & ASSOCIATES, P.C.**

June 8, 2022
Molly M. Lens
Page: 5

equal access. We again request that Marvel stop issuing unreasonable demands requiring Defendants to take actions which Marvel itself is not taking. Moreover, to the extent that Interrogatory No. 5 overlaps with Marvel's RFPs to Lieber (No. 45), Dettwiler (No. 47), and Ditko (No. 48), Defendants would object to those interrogatories pursuant to SDNY Local Rule 33.3(b) because they would be more practically answered through the RFPs Marvel has already propounded.

*   *   *

Nothing in this letter should be construed as a waiver or limitation of any of Defendants' or Subpoenaed Parties' rights or remedies, all of which are reserved.

Very truly yours,

Jaymie Parkkinen