# Exhibit 20



O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number: 0903423-00392

June 15, 2022

**Molly M. Lens**
D: +1 310 246 8593
mlens@omm.com

Marc Toberoff
Jaymie Parkkinen
Toberoff & Associates
23823 Malibu Road, Suite 50-363
Malibu, California 90265

Re:   *Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-07955-LAK; *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK; *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-07959-LAK; *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316-DG-TAM; and *Marvel Characters, Inc. v. Rico*, No. 2:21-cv-07624-DMG-KES

Dear Marc and Jaymie:

We write in response to your June 8 letter and email and June 13 letter.[1]

### *Kirby* Productions

Without conceding any obligation to do so, Marvel agrees to the procedure outlined in our June 1 letter and again in your June 8 letter. For clarity, that procedure is: (1) Marvel will produce the full extent of its *Kirby* documents, except as necessitated by attorney-client privilege, confidentiality or PII concerns, or any applicable privilege not listed here; (2) you will identify the bates ranges of any *Kirby* documents that you, defendants, and/or the Kirbys have in their files that Marvel does not produce or have[2]; and (3) defendants and the Kirbys will produce a single set of those *Kirby* documents they have that Marvel does not produce (and will not produce duplicates of the documents that Marvel produces).

### Marvel's Productions

(1) The format of our productions is consistent with our obligations under the applicable rules. In attempting to argue otherwise, you claim that we produced "a single copyright assignment in ninety-nine separate TIFF files. *See e.g.*, 2021MARVEL-0008103 - 2021MARVEL-0008202."

---

[1] Your characterization of our correspondence as "hyperbolic" finds no support in that correspondence, which focuses on the facts and the parties' respective positions. In contrast, for example, the first page of your June 8 letter is limited to accusations.

[2] To be clear, for efficiency, Marvel may identify bates ranges that it does not have prior to its productions and, in such case, Marvel asks that you confirm whether you have such files and, if so, promptly produce them.

Austin • Century City • Dallas • Los Angeles • Newport Beach • New York • San Francisco • Silicon Valley • Washington, DC
Beijing • Brussels • Hong Kong • London • Seoul • Shanghai • Singapore • Tokyo



You appear to have misloaded that document, which is actually a single 100-page document. Otherwise, as we previously explained, we've provided the file names where available and decline your request that we make up additional file names.[3]

(2) Marvel has not produced a privilege log for its first two productions because it did not withhold any documents therein on the basis of privilege. Marvel stands by its agreement to provide a privilege log within 30 days of any production from which documents have been withheld on the basis of privilege.

(3) Finally, your June 13 letter, which attempts to argue that Marvel is not diligently searching for and producing responsive documents, cannot distract from defendants' discovery failures. Starting with its first production on March 10, Marvel has continually produced responsive documents on a rolling basis. In contrast, defendants waited until May 1 to start producing documents (and even then, in an incorrect format that required a reproduction on *May 25*), with their productions still woefully incomplete. To date, Marvel has produced more than 4,000 documents comprising nearly 35,000 pages whereas defendants have *collectively* produced only 130 documents.

Leaving the volume of the parties' respective productions aside, Marvel has produced relevant documents, while defendants have not. For example, while your June 13 letter complains about Marvel's production of agreements with the defendant contributors, you ignore that—in contrast to Marvel—defendants have not produced any agreements between the defendant creators and Marvel. Your June 13 letter also feigns surprise at the absence of payment records from the 1960s and 1970s, even though you know that Marvel does not have these records from the *Kirby* litigation. Defendants—not Marvel—are the likely repository of these records, which only underscores the need for defendants to comply with their collection and production obligations.

The miniscule yield from Marvel's extensive correspondence and meet-and-confer efforts over the last several months suggests that Marvel will have no choice but to raise defendants' failure to comply with the discovery rules to the Court. Should defendants decide to raise any purported issues of their own to the Court, Marvel will be happy to defend its conduct and contrast it to that of defendants.

<b><u>Defendants' Productions</u></b>

(1) Your June 8 letter only confirms the validity of Marvel's concerns about defendants' productions.

*First*, you state that "[d]efendants have few responsive documents from their relatives." That is precisely the concern behind the questions Marvel has repeatedly asked but defendants previously have refused to answer—whether defendants have preserved relevant documents from the defendant contributors and produced them in this case. From your letter, it appears

---

[3] As a reminder, we agreed to provide spreadsheets with artist-specific information where applicable to moot defendants' objection to Marvel's omnibus production. But, to be clear, the spreadsheet that you're asking us to "supplement" is not even required under the applicable rules.

that defendants have failed to preserve the relevant documents and/or to obtain the relevant documents from whomever physically possesses the defendant contributors' files. Your clients are required to produce their own documents and any documents over which they have control, with control measured by whether they have "either the legal right or the practical ability to obtain [the] materials." *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 355 (S.D.N.Y. 2012), *aff'd*, 2012 WL 1849101 (S.D.N.Y. May 21, 2012). Please thus identify whether defendants have requested documents from any of their relatives and, if so, which relatives.

*Second*, you seek to excuse defendants' inadequate productions by focusing on the purported age of the requested documents. We understand that the defendant contributors worked for Marvel back in the 1960s and 1970s, but it is not credible that defendants have so few responsive documents relating to the defendant contributors' work for Marvel. For example, Keith Dettwiler—the executor of Heck's estate—has produced two documents, neither of which relates to his uncle's work for Marvel. As another example, Patrick Ditko—the administrator for Steve Ditko—does not appear to have produced Steve Ditko's files, including his recent correspondence with David Currie.

You also ignore that defendants have failed to provide *recent*, responsive communications. For example, *none* of the defendants has produced any documents supporting their claim of standing under Section 203. Notably, neither Keith Dettwiler nor Patrick Ditko has produced paperwork substantiating his appointment as executor or administrator, respectively, of the corresponding contributor's estate, even though such documentation should be within their possession or control. In addition, Buz Rico created a website devoted to his father, but has not produced the documents that he references thereon. And the defendants have not produced correspondence with Marvel.

Even leaving the age of some of the documents aside, it is clear that defendants have failed to comply with their obligations. Marvel served its first sets of requests for production four months ago. Marvel cannot continue to wait for defendants to comply with their production obligations, and Marvel intends to raise defendants' failures with the Court, unless defendants promptly cure their discovery defaults.

(2) As explained above, Marvel notes that it did not produce a privilege log to date because none was required—and that does not bear on the sufficiency of defendants' own log in any event. As far as defendants' log, the notation of "unknown" in the date field is insufficient to allow us to fully evaluate the claim of privilege, and therefore we ask that you provide, at minimum, information on the *approximate* date if the precise date is unavailable to you, which, given that the correspondence is with your firm, is within your ability to do.

### Marvel's Subpoenas

(1) <u>Mark Ditko.</u> We have received Mark Ditko's amended responses. In his amended responses to Request Nos. 2, 7, & 8, he has agreed to provide documents "concerning the Contributor's creative contributions to the Works and/or creative contributions to Marvel from 1955 to 1985." However, as per our April 25 letter, the agreed-upon scope of the request was

"the Contributors' work for Marvel during 1955 to 1985." Please either provide amended responses that accurately reflect the parties' agreement or confirm in writing that Mark Ditko interprets "creative contributions to Marvel from 1955 to 1985" as commensurate with "work for Marvel from 1955 to 1985."

As to his correspondence with David Currie, we understand that you're representing that the limited correspondence that you've produced to date is the "seemingly endless pages of comments" that Mark Ditko described in his foreword to Currie's book.

The amended responses also reflect that Mark Ditko is refusing to verify his representation that he does not have possession, custody, or control over Steve Ditko's correspondence with Currie. We disagree that he's not required to verify that representation. Please confirm whether Mark Ditko and/or Patrick Ditko have requested the correspondence from David Currie and, if not, why not.

(2) James Steranko. We have received James Steranko's June 14 production, provided in response to Marvel's March 18 subpoena. As an initial matter, we note that the production consists only of six documents, all of which apparently were pulled from counsel's files. Please confirm whether you contend that Steranko himself has no responsive documents. We will follow up in greater detail once we have had the chance to review the production.

## Marvel's Second Set of Interrogatories

Your letter admits that defendants intentionally refused to answer Marvel's May 11 questions because defendants hoped to cause Marvel to serve formal interrogatories. Because defendants should have answered Marvel's May 11 questions without requiring interrogatories, Marvel reserves its right to argue that its June 1 interrogatories should not count against Marvel's interrogatory limits (or, in the alternative, that Marvel should be permitted to serve more than 25 interrogatories for good cause). Marvel understands that defendants do not agree and, thus, a Court would need to resolve this dispute to the extent necessary. But this disagreement does not provide defendants with any basis to refuse to answer the June 1 interrogatories. To the contrary, to date, Marvel has served far less than 25 interrogatories in each case.

As to the response date, defendants misread our June 1 letter. Marvel was not requesting that defendants provide their responses to Marvel's June 1 interrogatories on June 10. Rather, Marvel was simply asking that defendants confirm their intent to provide timely substantive responses. Given defendants' history, Marvel did not want to be in a position where it waited another month for answers to its interrogatories, only to come up empty-handed again.

Finally, we appreciate defendants' belated recognition that Rule 33.3 does not permit interrogatories to be served that are better answered by depositions and/or document productions. The case law, however, is clear that Marvel's pending interrogatories are not Rule 33.3(b) interrogatories. *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 373 (S.D.N.Y. 2006) (rejecting argument under Rule 33.3 that questions about preservation efforts should be answered by deposition questions and compelling interrogatory responses).



Accordingly, Marvel looks forward to receiving defendants' complete verified answers on July 1 so that Marvel can promptly seek relief from the Court, if necessary.

**Defendants' Interrogatory Responses**

You claim that "Marvel's June 1 letter, like its May 24 letter, did not explicitly confirm whether it is Marvel's desire for Defendants to amend their interrogatory responses so that each response is based solely on each Defendant's personal knowledge alone." But our June 1 letter expressly stated that Marvel *does not wish* for defendants to amend their interrogatory responses to rely solely on each defendant's personal knowledge.[4] Our June 1 letter also explained—with supporting authority—that defendants' interrogatory answers *must* include "all information available to them, including that within their *agents*' possession." (emphasis added).

To be clear, Marvel stands by its prior position and will not accept interrogatory responses based on defendants' "personal knowledge alone." Defendants must comply with their obligations under the law to provide accurate and complete responses to Marvel's interrogatory responses, consistent with defendants' (and your firm's) obligation to conduct a reasonable investigation. *See, e.g., Murrey v. City of Los Angeles*, 2020 WL 2065019, at *5 (C.D. Cal. Feb. 21, 2020) ("Defendants and their counsel are expected to perform a reasonable inquiry to respond fully and conscientiously to [the opposing party's] interrogator[ies]."); *Shyh-Yih Hao v. Wu-Fu Chen*, 2011 WL 741225, at *1 (N.D. Cal. Feb. 24, 2011) ("If after conducting diligent inquiry and a reasonable investigation, Hao has no further responsive information, he shall say so in a supplemental verified interrogatory answer. Additionally, Hao shall, along with his supplemental verified interrogatory answer, provide defendant with a declaration (a) listing Hao's efforts (and those of his counsel) to obtain responsive information; (b) certifying that all information and documents have been provided to Chen; and (c) that he and his counsel have exhausted efforts to locate responsive information and documents.").

As our prior correspondence has explained, defendants' interrogatory responses are currently insufficient and must be amended to provide complete information. In the intervening weeks, however, defendants seem to be moving backwards and are suggesting that they intend to amend their interrogatory answers to provide even less information than before. This will not do. Defendants must amend to provide responses consistent with their obligations.

Distinct from defendants' substantively inadequate responses is the issue of defendants' inadequate verifications. As per the case law previously cited in our correspondence, defendants must omit the caveat that their interrogatories are verified on "information and belief." Defendants must provide verifications under oath, as per the rules.

Finally, as to Interrogatory No. 5, while we appreciate your recognition that Rule 33.3 does not permit a party to serve interrogatory requests that are better suited for requests for production (and, for this reason, many of defendants' pending interrogatories fail), we are confused by your

---

[4] M. Lens June 1 Letter at 4 ("[D]efendants have . . . confusingly inquired 'whether it is Marvel's position that it wishes for Defendants to amend their interrogatory responses so that each response is based solely on each Defendant's personal knowledge alone.' Marvel does not so wish.").

response since defendants are refusing to produce these documents. Otherwise, we generally agree that the parties do not have an obligation to acquire publicly available documents, unless a party intends to use such documents in the litigation. Based on your response, we understand that defendants do not intend to use any of the interviews that they have identified in this case but are refusing to produce. Please confirm that is accurate.

### Defendants' Interrogatories

Your June 8 email proposed that defendants would give Marvel an extension of its time to respond to defendants' pending interrogatories until the end of July, provided Marvel waived all of its objections to defendants' interrogatories, including under Rule 33.3. That is not reasonable, and Marvel does not agree to defendants' proposal. That said, as we've explained previously, both parties would benefit from a further extension of Marvel's time to respond, so that Marvel has additional time to investigate its responses to defendants' nearly 100 interrogatories. Defendants' June 8 proposal confirms that there is no urgency to Marvel answering defendants' interrogatories. When we previously requested more time, defendants only agreed to a two-week extension. We ask that defendants reconsider their willingness to provide a condition-free extension, especially in light of the number of extensions that Marvel has granted as a matter of professional courtesy to defendants.

\*     \*     \*

We look forward to your prompt response. All rights reserved.

Sincerely,

*Molly M. Lens*

Molly M. Lens
Of O'Melveny & Myers LLP

6