# Exhibit 21



O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number: 0903423-00392

July 15, 2022

Molly M. Lens
D: +1 310 246 8593
mlens@omm.com

Marc Toberoff
Jaymie Parkkinen
Toberoff & Associates
23823 Malibu Road, Suite 50-363
Malibu, California 90265

Re:   *Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-07955-LAK; *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK; *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-07959-LAK; *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316-DG-TAM; and *Marvel Characters, Inc. v. Rico*, No. 2:21-cv-07624-DMG-KES

Dear Marc and Jaymie:

In the nearly ten months since Marvel filed its September 2021 complaints, Defendants have produced only isolated documents and provided evasive and incomplete responses to Marvel's interrogatories. As fact discovery closes in November, and Defendants have repeatedly resisted Marvel's efforts to meet and confer, time is of the essence. We thus write in a final attempt to determine whether the parties can resolve their discovery disputes without court intervention.

### Defendants' History of Delay and Evasion

Under Rule 26, Defendants were obligated to begin collecting and producing responsive documents last fall. *See, e.g.*, *MCI v. Rico*, Dkt. 12 (Sept. 28, 2021 Standing Order) ("[T]he parties shall comply fully with the letter and spirit of Fed. R. Civ. P. 26(a) and thereby obtain and produce most of what would be produced in the early stage of discovery, because at the Scheduling Conference the Court will impose firm deadlines to complete discovery.").[1] Defendants, however, did not do so. Indeed, Defendants' responses to Marvel's recent interrogatories suggest that Defendants did not even start to collect documents until sometime after your firm responded to Marvel's Requests for Production. *See, e.g.*, June 29, 2022 Responses of Michele Hart-Rico, 14:11-14 (stating that "Defendant reviewed Marvel's Requests

---

[1] Consistent with its obligations, Marvel produced a substantial amount of documents on March 10, 2022, a month before its deadline to respond to Defendants' First Sets of Requests for Production, and has continued to produce documents on a rolling basis since then. To date, Marvel has produced over 10,000 documents. Based on our current understanding, and subject to its right to continue to produce additional documents that it may identify, Marvel's productions will be substantially complete by the end of July.

for Production and has made diligent searches, both physical and electronic, for relevant, responsive Documents in accordance with Defendant's responses to Marvel's Requests for Production.").

On March 14, Defendants responded to Marvel's First Sets of Requests for Production.[2] Defendants, however, did not produce *any* documents. And, in continued violation of Rule 34, Defendants refused to provide any estimates whatsoever as to the timing of their productions. *See, e.g.*, April 29, 2022 M. Lens Letter (citing, *inter alia*, 2015 Adv. Comm. Note to Fed. R. Civ. P. 34(b)(2)(B) ("When it is necessary to make the production in stages the response should specify the beginning and end dates of the production.")).

In fact, despite Marvel's repeated follow-up efforts, Defendants waited until May 1 to produce *any* documents. And Defendants' May 1 "production" was impermissibly lumped together as five documents—one omnibus PDF per case. In addition, Defendants failed to provide any custodial or family information to support their standing to exercise their purported termination rights. As Marvel's May 6 email detailed, Defendants' purported production thus ran afoul of established bare-minimum standards. *See, e.g.*, *In re Specialist & Other Vessel Owner Limitation Actions*, 2018 WL 11290558, at *1-3 (S.D.N.Y. Feb. 8, 2018) (ordering party to reproduce its documents into unitized PDFs); *Venture Corp. Ltd. v. Barrett*, 2014 WL 5305575, at *3 (N.D. Cal. Oct. 16, 2014) (requiring producing party to (1) organize and label its produced documents or provide custodial information and (2) produce production load files containing searchable text and metadata). Defendants were thus required to re-produce their improper first production, though they delayed doing so for several more weeks.

On May 11, while Marvel continued to wait for Defendants to properly produce their documents, Marvel sought important confirmation from Defendants on the scope of their collection efforts. As Marvel explained, with the exception of the *Lieber* case, these cases were somewhat unusual in that Defendants' claimed termination rights flow from the Deceased Contributors' claimed termination rights—that is, their claims arise from the alleged rights of another. Marvel thus sought confirmation that Defendants' express agreement in their responses to "conduct a reasonable search of *custodians* reasonably likely to have non-cumulative, non-privileged responsive Documents" *included* the Deceased Contributors' files. Marvel also asked Defendants to (a) confirm that they were not contending any of the Deceased Contributors' files were outside their possession, custody, or control; (b) identify the custodian for specific categories of documents; (c) confirm that Defendants had taken steps to preserve not only their files but those of the Deceased Contributors (and to identify such steps, including when such steps were taken); and (d) identify any of the Deceased Contributors' documents that Defendants contended were lost or destroyed (and when).

Defendants ignored Marvel's May 11 Letter. Marvel then followed up repeatedly until Defendants finally responded more than two weeks later on May 26, but Defendants' entire

---

[2] As further evidence of their delay and obstruction, Defendants' initial responses refused agree to provide responsive documents to many of Marvel's requests. During the extended meet-and-confer process, however, Defendants agreed to produce responsive documents.

"response" was as follows: "Defendants appreciate Marvel's suggestions. Defendants confirm that they have and will continue to conduct themselves in compliance with all applicable Federal and Local Rules." Defendants' tardy and flippant response to Marvel's specific inquiries only exacerbated Marvel's concerns about Defendants' approach to their discovery obligations.

Accordingly, on June 2, Marvel was forced to serve formal interrogatories on the critical issues of Defendants' preservation, collection, and production of relevant documents.[3] Then, while Defendants' responses to these interrogatories were pending, Defendants served "amended" responses to Marvel's First Sets of Interrogatories. Even though the parties were in the process of meeting and conferring about Defendants' already inadequate responses, Defendants' amended responses gutted Defendants' responses even further by eliminating all information that Defendants claimed was purportedly not within their personal knowledge—including the knowledge of your firm.[4] Not surprisingly, on July 1, Defendants proceeded to serve incomplete and evasive responses to Marvel's June 2 Interrogatories.

This letter thus addresses Defendants' deficient responses to Marvel's document requests and interrogatories in a final attempt to reach resolution without motion practice.[5]

### Defendants' Paltry Document Productions

To date, Defendants have collectively produced only 238 documents, broken down as follows: Dettwiler (5 documents); Lieber (144 documents); Ditko (57 documents); the Colan Heirs (5 documents), and the Rico Heirs (27 documents). Defendants' facially deficient productions fail to respond to nearly all of Marvel's Requests for Production. For example, the only documents that the Colan heirs have produced to support their claim to terminate purported grants of contributions to numerous Marvel publications are their birth certificates, a couple publicly

---

[3] Defendants' claim that these interrogatories violate S.D.N.Y. Local Rule 33.3 is wrong. *See Treppel v. Biovail Corp*., 233 F.R.D. 363, 373–74 (S.D.N.Y. 2006) ("To be sure, Local Civil Rule 33.3 embodies a well-founded preference for depositions and document requests over interrogatories. However, in this instance any deposition concerning the operation of Biovail's electronic document system would be an exercise in frustration if counsel were not previously provided basic information about the system. That information is best obtained by interrogatory. Biovail shall therefore treat the Document Retention Questionnaire and the supplementary inquiries contained in the August 19, 2005, and September 12, 2005 letters as interrogatories and shall provide substantive responses."). Given that Defendants knowingly violated Rule 33.3 by serving scores of premature interrogatories, Defendants' purported objection to Marvel's limited interrogatories is especially specious.

[4] While Defendants' amended interrogatory responses to Marvel's First Sets of Interrogatories state that they reflect the result of "the parties' meet-and-confer discussions," they do no such thing. To the contrary, Marvel repeatedly advised Defendants that they were not to further narrow their interrogatory responses and that your firm's knowledge must be included in their responses. *See* M. Lens June 15, 2022 Letter at 5; M. Lens June 1, 2022 Letter at 4.

[5] Because the parties have already met and conferred about the substance of Defendants' initial interrogatory responses, Marvel does not repeat those deficiencies here.

available documents, and a note from Stan Lee. That's it. Marvel refers Defendants to its June 8 Letter, which details many of the deficiencies in Defendants' productions.

Nor can Defendants continue to point to the alleged age of the relevant documents as an excuse. To the contrary, as the below examples demonstrate, it is readily apparent that Defendants have not complied with their obligations to produce all documents within their possession, custody, and control.

- Dettwiler has not produced Don Heck's will pursuant to which he claims to act as Executor for Mr. Heck.

- The Colan Heirs have not produced any documents relating to Colan's 2008 Agreement with Marvel—in which Colan confirmed his understanding that his work for Marvel was done on a work-made-for-hire basis—even though Marvel knows from its own files that their mother emailed with Marvel about that agreement around the same time that she was speaking with your firm about potential legal representation.

- Buz Rico has not produced any the documents pertaining to his father's work for Marvel, including those that he cited on his own website.

- Patrick Ditko has not requested his brother's correspondence with author David Currie, who recently wrote a book based on Steve Ditko's own correspondence about working at Marvel. Moreover, given that Steve Ditko passed away recently --without having even claimed he had termination rights, much less having tried to exercise them -- the dearth of relevant materials from Patrick Ditko is especially concerning.

- Larry Lieber has not produced any personal records relating to his claims prior to 1998 and apparently has not made any attempt to identify any responsive documents outside his "studio apartment." In addition, it appears that your firm left Lieber—a 90-year-old man with professed computer illiteracy—to do his own electronic searches for documents. *See, e.g.*, LIEBER-0252 ("I'm not sending you a photo because I'm not good at sending attachments. I'm not that skilled with the computer in general.").

These examples reflect that Defendants have failed to produce documents that should be within their possession.

In addition, Defendants are not only obligated to produce documents within their possession but also those within their "control." Fed. R. Civ. P. 34(a)(1). Defendants' July 1 interrogatory responses seemingly confirm that they have made no attempt to obtain any documents that are not actually in their possession, but which they control. Defendants have an obligation to do so. *See, e.g.*, *Waite v. UMG Recordings, Inc.*, 2020 WL 3959185, at *2–3 (S.D.N.Y. July 13, 2020) (Judge Kaplan) ("A party is deemed to 'control' documents that it has the legal right or the practical ability to obtain—even where those documents are in the physical possession of non-parties."); *Ramgoolie v. Ramgoolie*, 2019 WL 5722082, at *2 (S.D.N.Y. Jan. 29, 2019) (noting that documents "are considered to be under a party's control when that party has the right,

4

authority, or practical ability to obtain the documents from a non-party to the action" and directing party to request and produce statements from banks and financial records from accountant); *Annunziato v. Collecto, Inc.*, 304 F.R.D. 360, 363 (E.D.N.Y. 2015) (finding that where a non-party was an agent of a party, the party had the "right, authority or practical ability to obtain [] documents from [the] non-party"); *De Vos v. Lee*, 2008 WL 2946010, at *1 (E.D.N.Y. July 29, 2008) ("[D]ocuments in the possession of a party's accountant are deemed within that party's control for purposes of Rule 34 discovery."); *SEC v. Premier Holding Corp.*, 2021 WL 6104308, at *4–5 (C.D. Cal. Sept. 7, 2021) (Magistrate Scott) ("At the hearing, Letcavage's counsel indicated that Letcavage has no documents in his possession, custody, or control which are responsive to Requests 7–8 and 10–24.  The Court finds this assertion not plausible . . . In supplementing his responses, if Letcavage still contends he has no documents in his possession, custody, or control responsive to a Request, he shall execute a due diligence declaration describing where and how he looked for responsive documents and affirming that he either has or will produce all nonprivileged, responsive documents.  The term "control" is broadly construed, and it includes documents that the responding party has the legal right to obtain from third parties.  To the extent there is any confusion regarding the meaning of "currently in Plaintiff's possession, custody, or control," a document is currently in Plaintiff's control if he has a legal right to obtain it from third parties.  At a minimum, Letcavage shall describe what efforts he took to retrieve responsive information from Premier.") (quotation marks and citations omitted).

Defendants must advise whether they contend that their productions are substantially complete and, if not, Defendants need to identify what searches for documents remain outstanding and provide a date certain for their production.  Marvel also asks that Defendants confirm that they will promptly work to identify third parties within their control that may have relevant information—including but not limited to lawyers, accountants, authors, and family members.  The parties can then meet and confer about these efforts and how to best obtain these documents.

### Defendants' Verifications

Defendants' responses to Marvel's First and Second Sets of Interrogatories are evasive and incomplete.  In an attempt to justify them, Defendants argue that—because they are individuals—they are only obligated to provide information that is within their "personal knowledge."  Based on this, Defendants proceeded to argue that their agents' knowledge—including your firm's knowledge—need not be provided, as they cannot verify such information based on personal knowledge.  Defendants are wrong.

Defendants are conflating distinct concepts.  While Defendants have an obligation to answer interrogatories based on their personal knowledge, this does not absolve Defendants of their obligation to "'compile information within [their] control' and provide 'all information available' in [their] responses."  *Rivera v. UPS*, 325 F.R.D. 542, 546 (S.D.N.Y. 2018)[6]; *see also United States v. All Assets Held at Bank Julius Baer & Co.*, 309 F.R.D. 1, 14 (D.D.C. 2015) (same).

---

[6] In all the cases in this paragraph, the "party" referenced is an individual.

And the law is equally clear that information within a party's control includes information known by its agents—*including counsel*. *See, e.g.*, *Kilroy v. L.A. Unified Sch. Dist. Bd. of Educ.*, 2018 WL 6071081, at *2 (C.D. Cal. Sept. 13, 2018) ("As the Supreme Court held more than 70 years ago, '[a] party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney.'"); *see also* 8B Fed. Prac. & Proc. Civ. § 2177 Answers to Interrogatories (3d ed.) ("In answering interrogatories, a party is charged with knowledge of what its agents know, or what is in records available to it, or even, for purposes of Rule 33, information others have given it on which it intends to rely in its suit. A party must disclose facts in its attorney's possession even though the facts have not been transmitted to the party."); *Ferguson v. Wilcher*, 2019 WL 3017670, at *1 (C.D. Cal. Apr. 3, 2019) (same).

Defendants cite three cases in support of their untenable position. Two of which do not actually speak to the issue at hand but rather simply state the general rule that a party should answer interrogatories based on personal knowledge. *See Apple Hill Growers v. El Dorado Orchards*, 2022 U.S. Dist. LEXIS 86100, at *40 (E.D. Cal. May 12, 2022) ("Plaintiff's counsel is correct that an individual answering interrogatories on his own behalf must answer according to his own personal knowledge; whereas corporate representatives answering interrogatories for a corporate party need not have personal knowledge and can instead answer based on available information."); *O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007) ("Thus, an individual party is treated differently than a party that is a business entity; the former must answer interrogatories based on personal knowledge, whereas the latter may answer interrogatories based on available information.").[7] The third—an out-of-jurisdiction, unpublished decision—is clearly an outlier. And wrong. *See Turner v. Craig*, 2010 U.S. Dist. LEXIS 131661, at *5-6 (N.D. Cal. Dec. 2, 2010).[8] This purported authority cannot—and does not—override the well-established case law cited above.

Fundamentally, Marvel is entitled to full and complete interrogatory responses from Defendants. Defendants cannot use their individual-party status to shield discoverable information from Marvel. As Marvel raised previously, Defendants' prior verifications—on information and belief—were not only improper but raised serious questions about Marvel's ability to rely on Defendants' answers. *See, e.g., Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 677 n.4 (2d Cir. 2016) ("Plaintiff also argues that the district court erred in failing to consider Gustafson's verified answer to an interrogatory, which is consistent with her version of events. That argument lacks merit. Affidavits submitted in opposition to summary judgment must 'be made on personal knowledge,' Fed. R. Civ. P. 56(c)(4), and that requirement is 'not satisfied by assertions made on information and belief.' The verified answer is stated only

---

[7] In reciting that a corporate party need not have personal knowledge and can instead answer based on available information, neither court is suggesting that an individual party does not need to compile information within their control (including information known by its agents) and information others have provided to the party on which it intends to rely in its suit.

[8] The *Turner* court openly acknowledged that it did not understand the parties' argument, which likely led to the erroneous result.

'[u]pon information and belief,' [] rather than on the basis of personal knowledge, and therefore may not be considered in opposition to summary judgment.") (internal citation omitted). Nevertheless, in an effort to avoid motion practice, Marvel offered to consider a stipulation through which Defendants' interrogatory responses could be used as though the "information and belief" qualifier were not included.  *See* May 24, 2022 M. Lens Letter.  While Defendants ignored that suggestion (and opted to gut their responses instead), Marvel reiterates that offer, as Marvel would prefer to avoid motion practice.  Failing agreement, however, Marvel will need to raise this issue with the court.

## Marvel's Second Set of Interrogatories

Even leaving aside the verification issue, Defendants' responses to Marvel's Second Sets of Interrogatories are inadequate.[9]  Indeed, as explained in more detail below, despite having waited months for answers, Marvel still does not know who, if anyone, has the Deceased Contributor's files and whether anything was done to preserve them.  Marvel thus asks that Defendants answer the below questions and agree to supplement their responses accordingly.

### Interrogatory No. 1

Interrogatory No. 1 asks Defendants to "Describe the steps that You have taken to preserve Documents and information Concerning Steve Ditko, the Works, and/or Marvel . . . Including when such steps were taken."  Further, to facilitate a complete response, Interrogatory No. 1 lists specific types of documents as to which Defendants should answer.

In response, Defendants simply assert conclusory claims that Defendants' counsel "instructed" them to maintain documents and they took "diligent efforts" to do so.  Further, Defendants do not identify when such instruction was made or when they undertook any such efforts, but say only that their supposed, and again unidentified, "efforts" commenced once it was "reasonably expected that Defendant would exercise Defendant's termination interest in connection with the Works."

---

[9] General Objection No. 6 states that, "without committing to undertake a search specifically for information in the public record, Defendant will not withhold any responsive information that Defendant identifies in Defendant's files through a reasonably diligent search because it may also be available in the public record, but Defendant will not undertake a search of the public record for Marvel."  Marvel believes that Defendants copied and pasted this objection from their objections to Marvel's Requests for Production.  As these are interrogatories, however, the reference to "files" is inapplicable.  Please confirm that Defendants intended this objection to read as follows:  "without committing to undertake a search specifically for information in the public record, Defendant will not withhold any responsive information of which Defendant is aware because it may also be available in the public record, but Defendant will not undertake a search of the public record for Marvel" and that Defendants will amend their responses accordingly.  Marvel notes that its recent interrogatory responses contain this same error and, provided Defendants agree to correct this objection, Marvel will as well.

This is insufficient.  To the extent that Defendants intend to rely on an alleged "instruction" from their counsel to "make a diligent effort to maintain all Documents which Concern [Defendant Contributor] and Marvel and/or the Works, and any Documents which might be at all relevant or requested in connection with Defendant's exercise of Defendant's termination rights under the Copyright Act," Defendants must provide factual support for such claim on which they intend to rely, including when this instruction was provided.  *See, e.g., Palmer v. Cognizant Tech. Sols. Corp.*, 2021 WL 3145982, at *6 (C.D. Cal. July 9, 2021) ("[P]laintiffs are entitled to non-privileged information as to 'what kinds and categories of ESI [defendants'] employees were instructed to preserve and collect, and what specific actions they were instructed to take to that end,' as well as what ESI, if any, including emails, may have been missed during the document collection process, or lost as a result of defendants' transition to Office 365."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 6290584, at *5–6 (S.D.N.Y. Oct. 27, 2020) (party entitled to know when litigation hold notice was received); *In re eBay Seller Antitrust Litig.*, 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007) ("[P]laintiffs are entitled to know what kinds and categories of ESI eBay employees were instructed to preserve and collect, and what specific actions they were instructed to undertake to that end.").

### *Interrogatory No. 2*[10]

Interrogatory No. 2 asks each Defendant to "Identify which, if any, of [Deceased Contributor]'s Documents, You consider outside of Your possession, custody, or control and, for any such documents, identify who You believe has possession, custody, or control."  Further, to facilitate a complete response, Interrogatory No. 2 lists specific exemplar categories of documents as to which Defendants should answer.

In response, Defendants state that "Defendant has no personal knowledge or insufficient personal knowledge of the existence of responsive Documents outside Defendant's possession, custody, or control."  Defendants then continue to speculate that other people and/or Marvel may have responsive documents but claim such documents would be outside Defendants' possession, custody, or control.

Defendants' responses—which are tellingly identical across all Defendants—seem designed to provide no information.  As an initial matter, it is entirely unclear what Defendants mean by stating that they have "insufficient personal knowledge," as opposed to "no personal knowledge."  In addition, Defendants' responses are contradictory, as Defendants indicate that they are not aware of any of the Deceased Contributor's files that are outside their possession, custody, or control but simultaneously speculate that such documents may exist.

Because Defendants previously refused to answer Marvel's May 11 questions, and now has refused to substantively answer Interrogatory No. 2, Marvel still does not know whether Patrick and/or Mark Ditko, Nanci Solo and/or Erik Colan, and Michele Hart Rico and/or Buz Rico have

---

[10] Interrogatories No. 2 and 3 were not served on Larry Lieber, as unlike the other defendants, Lieber served purported termination notices on his behalf.

possession of Steve Ditko's, Gene Colan's, and Don Rico's files, respectively.[11]  Marvel similarly does not know whether anyone else has any of the Deceased Contributors' files (including Don Heck's).  Marvel is entitled to this information.

In addition, Defendants' responses suggest that they have not made any effort to obtain documents that are not physically located in their homes and/or computers (if that).  Yet it is equally clear that relevant documents likely exist elsewhere.  For example, Nanci Solo and Erik Colan say that their cousin "has an office/warehouse in Moonachie, New Jersey where a lot of Gene Colan's belongings were stored after his death."[12]  Accordingly, as noted above, Marvel asks that Defendants investigate which third-parties may have relevant information and make themselves available to meet and confer on this issue.

### Interrogatory No. 3

Interrogatory No. 3 asks Defendants to "Identify which, if any, of [the Deceased Contributor's] Documents" relevant to this action "You consider lost or destroyed, how and why such Documents were lost or destroyed, and when."  Again, to facilitate Defendants' complete response, Interrogatory No. 3 details a number of categories of responsive documents.

Defendants Ditko, Dettwiler, and the Rico Heirs all state that "Defendant does not know if such Documents existed and were thereafter lost or destroyed.  To the extent any such Documents existed and were later lost or destroyed, Defendant does not know how and why such Documents were lost or destroyed, and when."[13]  This, of course, tells Marvel absolutely nothing.  Nor does it suggest that Defendants have done anything to conduct a reasonable investigation into Marvel's question.  Again, Marvel is entitled to know what happened with the Deceased Contributors' files.

### Interrogatory No. 4

Interrogatory No. 4 asks Defendants to "Describe Your efforts to identify, obtain, and/or collect Documents responsive to MCI's Requests for Production."

---

[11] Marvel understands that Dettwiler has confirmed that he does not have any of Heck's files, as Dettwiler has admitted that he left them to be thrown away by his landlord in 2014.

[12] While their responses indicate that some of Gene Colan's documents were damaged or lost in 2012, there is no claim that all the materials were lost.

[13] Michele Hart-Rico continues to add that Don Rico left his "files" in New York in the 1950s, decades before he worked on the works at issue, but only does so on "information and belief," despite providing a verification based on personal knowledge.  As noted above, Defendants Solo and Colan also disclose that "Defendant's cousin has an office/warehouse in Moonachie, New Jersey where much of Gene Colan's belongings were stored after his death, including boxes of documents, and a lot of this which was not stored high enough off the ground on shelves, was destroyed by flooding caused by Hurricane Sandy in late October 2012."

After their boilerplate objections, Defendants' responses all open with the same claim: "Defendant reviewed Marvel's Requests for Production and has made diligent searches, both physical and electronic, for relevant, responsive Documents in accordance with Defendant's responses to Marvel's Requests for Production."

The *entirety* of Defendants' support for this claim of "diligent physical and electronic searches" is as follows:

- Larry Lieber claims that he "conducted a diligent search of his small one-room studio apartment for responsive Documents, including the files in his four two-drawer filing cabinets, all shelves, closets and drawers and his computer. Defendant has no offsite storage facility outside his apartment."

  Patrick Ditko claims that he "searched his computer files and [] carefully searched his house, including cabinets, shelves, closets and storage boxes kept in his garage and in his remodeled basement for responsive Documents."[14]

- Dettwiler claims that he "resides in a small studio apartment and has no storage facility outside his apartment. Defendant therefore diligently searched his apartment and computer for any Documents responsive to Marvel's Requests."

- Nanci Solo claims that she "conducted a diligent search of her entire house, including her basement and detached garage where she keeps storage boxes, two large containers where she keeps files previously kept in a five-drawer vertical file cabinet, the files contained in two two-drawer vertical file cabinets, her closets and shelves, and [] likewise searched her computer files for any responsive Documents. Defendant has no offsite storage facility."

- Erik Colan claims that he "conducted a diligent search of his entire one-room studio apartment, including all cabinets, drawers, boxes, closets and s[h]elves, and Defendant also searched his computer files for any responsive Documents. Defendant has no offsite storage facility."

- Michele Hart-Rico claims that she "search[ed] [her] apartment, including the filing cabinet in her apartment, her personal computer, and search[ed] her small offsite storage room in North Hollywood, California."

- Buz Rico claims that he "conducted a diligent search of his computer files, the entirety of his house, including his files in the four-drawer filing cabinet therein, all shelves, closets and drawers, his garage, his home office, and all files therein. Defendant has no offsite storage facility outside his home."

---

[14] Unlike the other Defendants, Ditko does not state that he does not have an offsite storage facility.

Based on their responses, it is clear that your firm delegated the task of document collection entirely to the individual defendants. To the extent that you contend otherwise, please provide factual support for this claim. *See, e.g.*, *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 50 (S.D.N.Y. 2014) ("[I]t is not sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information. Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched."); *Alter v. Rocky Point Sch. Dist.*, 2014 WL 4966119, at *2 (E.D.N.Y. Sept. 30, 2014) ("Failing to personally oversee searches for relevant discovery leaves an attorney open to sanctions for inadequately supervising such discovery."). And, even as to the limited searches that they did, Defendants provide no detail whatsoever to enable Marvel to evaluate their claim that they searched for electronic files. Especially given Larry Lieber's age, and admitted computer illiteracy,[15] this is especially concerning. In addition, Defendants' responses omit any mention of your firm's searches for documents, even though you have listed your firm as a custodian (as to both produced documents and on your privilege log). As these examples demonstrate, Defendants' responses are incomplete and inadequate.

\*   \*   \*

Given how long many of these important issues have been outstanding, we ask for your written response by July 22 and that you promptly make yourselves available to meet and confer thereafter.

All rights reserved.

Sincerely,


Molly M. Lens
Of O'Melveny & Myers LLP

---

[15] Lieber himself notes in produced correspondence that he is technologically deficient. *See, e.g.*, LIEBER-0252 ("I'm not sending you a photo because I'm not good at sending attachments. I'm not that skilled with the computer in general.").