# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARVEL CHARACTERS, INC.,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>LAWRENCE D. LIEBER,<br><br>    Defendant and Counterclaimant. | Case No.: 1:21-cv-7955-LAK<br>and consolidated cases<br>21-cv-7957-LAK and 21-cv-7959-LAK<br><br>Hon. Lewis A. Kaplan |
| MARVEL CHARACTERS, INC.,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>KEITH A. DETTWILER, in his capacity as Executor of the Estate of Donald L. Heck,<br><br>    Defendant and Counterclaimant. | **DEFENDANT LIEBER'S FIRST SET OF INTERROGATORIES TO MARVEL** |
| MARVEL CHARACTERS, INC.,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko,<br><br>    Defendant and Counterclaimant. | |

PROPOUNDING PARTY:    LAWRENCE D. LIEBER
RESPONDING PARTY:    MARVEL CHARACTERS, INC.
SET NO.:    ONE

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern and Eastern Districts of New York ("Local Rules"), Defendant and Counterclaim-Plaintiff Lawrence D. Lieber ("Defendant") hereby propounds the following First Set of Interrogatories ("Interrogatories") on Plaintiff and Counterclaim-Defendant Marvel Characters, Inc. ("Marvel"). Defendant requests that Marvel respond under oath and in writing to each Interrogatory within thirty (30) days of service. The Interrogatories are continuing in nature, and Marvel is hereby requested to timely supplement its response to each and every Interrogatory whenever it learns that the response is in some material aspect incomplete or incorrect in accordance with Federal Rule of Civil Procedure 26(e).

## DEFINITIONS

1. "LIEBER" as used herein, refers to Lawrence D. Lieber also known as Larry Lieber.

2. "MARVEL" as used herein, refers to Plaintiff and Counterclaim-Defendant Marvel Characters, Inc., and/or any related or predecessor entities, INCLUDING Atlas Magazines, Inc. Cadence Industries Corporation, Canam Publishers Sales Corp., Magazine Management Co., Inc., Marvel Comics Group, Marvel Entertainment Group, Inc., Marvel Comics, Inc., Non-Pareil Publishing Corp., Perfect Film & Chemical Corporation, and Vista Publications, Inc., and, where applicable, their present and former officers, directors, employees, agents, partners, subsidiaries, members, and affiliated.

3. "LIEBER WORKS" as used herein, refers to LIEBER's creative contributions to the comic book stories as follows:

   a.   The comic book stories created or co-created by LIEBER entitled "Return of the Ant-Man, Part 1," "Return of the Ant-Man, Part 2: An Army of Ants!," and "Return of the Ant-

Man, Part 3: The Ant-Man's Revenge!" that were published and embodied in *Tales to Astonish* Vol. 1, No. 35, including its cover page;

      b.      The comic book stories along with all characters, story elements and/or indicia created or co-created by LIEBER that were published and embodied in *Tales to Astonish* Vol. 1, Nos. 36-43, 46-58;

      c.      The comic book story featuring The Mighty Thor, along with all characters, story elements and/or indicia created or co-created by LIEBER that were published and embodied in *Journey Into Mystery* Vol. 1, No. 83, including its cover page;

      d.      The comic book stories along with all characters, story elements and/or indicia created or co-created by LIEBER that were published and embodied in *Journey Into Mystery* Vol. 1, Nos. 84-104;

      e.      The comic book story entitled "Iron Man is Born!," along with all characters, story elements and/or indicia created or co-created by LIEBER that were published and embodied in *Tales of Suspense* Vol. 1, No. 39; and

      f.      The comic book stories that feature The Wizard (a.k.a. Bentley Wittman), along with all characters, story elements and/or indicia created or co-created by LIEBER that were published and embodied in *Strange Tales* Vol. 1, Nos. 102-113.

      4.      "WORKS" as used herein, refers to the following, either individually or collectively:

      a.      The comic book stories entitled "Return of the Ant-Man, Part 1," "Return of the Ant-Man, Part 2: An Army of Ants!," and "Return of the Ant-Man, Part 3: The Ant-Man's Revenge!" that were published and embodied in *Tales to Astonish* Vol. 1, No. 35, including its cover page;

b. The comic book stories along with all characters, story elements and/or indicia that were published and embodied in *Tales to Astonish* Vol. 1, Nos. 36-43, 46-58;

c. The comic book story featuring The Mighty Thor, along with all characters, story elements and/or indicia that were published and embodied in *Journey Into Mystery* Vol. 1, No. 83, including its cover page;

d. The comic book stories along with all characters, story elements and/or indicia that were published and embodied in *Journey Into Mystery* Vol. 1, Nos. 84-104;

e. The comic book story entitled "Iron Man is Born!," along with all characters, story elements and/or indicia that were published and embodied in *Tales of Suspense* Vol. 1, No. 39; and

f. The comic book stories that feature The Wizard (a.k.a. Bentley Wittman), along with all characters, story elements and/or indicia that were published and embodied in *Strange Tales* Vol. 1, Nos. 102-113.

5. The term "COMMUNICATION" and "COMMUNICATIONS" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

6. The term "DOCUMENT" and "DOCUMENTS" defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

7. The terms "PLAINTIFF" and "DEFENDANT" as well as a party's full or abbreviated name or a pronoun referring to a party (e.g., "YOU" or "YOUR") mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or

affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

8. The terms "PERSON" and "PERSONS" are defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

9. The term "CONCERNING" means relating to, referring to, describing, evidencing or constituting. "CONCERNING" has the same meaning as "CONCERN."

10. "AGREEMENT" and "AGREEMENTS" as used herein refer to any contract, whether written or oral, express or implied.

11. "INCLUDING" means "including, but not limited to."

12. "IDENTIFY" (with respect to PERSONS). When referring to a PERSON, "IDENTIFY" means to give, to the extent known, the PERSON'S full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a PERSON has been identified in accordance with this subparagraph, only the name of that PERSON need be listed in response to subsequent discovery requesting the identification of that person.

13. "IDENTIFY" (with respect to DOCUMENTS). When referring to DOCUMENTS, "IDENTIFY" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and recipient(s). In the alternative, the Marvel may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

14. "IDENTIFY" (with respect to COMMUNICATIONS). A request to "IDENTIFY" a COMMUNICATION means: (a) to state whether it was written or oral, and if written, to identify each document comprising or evidencing such COMMUNICATION; (b) to state the date and place

of such COMMUNICATION; (c) to identify each individual participating therein and each individual who was present at the place of places of such COMMUNICATION; (d) to state what was said by each participant in the course of such COMMUNICATION, or if not known, the substance of such COMMUNICATION.

15.     The singular form includes the plural form, and vice versa.

## INSTRUCTIONS

1.      In answering the following Interrogatories, YOU shall furnish all information that is available to YOU, including information in the possession, custody, or control of YOUR attorneys, accountants, investigators, experts, representatives, or other agents.

2.      If, in answering the following, YOU are unable to answer fully an Interrogatory, after exercising due diligence to obtain the information to do so, YOU shall answer said Interrogatory to the fullest extent possible, specifying YOUR inability to answer the remainder, describing the efforts taken by YOU to obtain the information to fully answer said Interrogatory, and stating whatever information or knowledge YOU have concerning the unanswered portion thereof.

3.      If, in answering the following Interrogatories, YOU state in whole or in part that "I do not know" or "unknown" or otherwise indicate any similar lack of knowledge, YOU shall state in detail all efforts made to obtain the information requested, the nature of any continuing efforts in that regard, and by whom any such efforts were and are being made.

4.      If any DOCUMENTS, the identification of which would be responsive to the Interrogatories, has been lost or destroyed or is otherwise unavailable, describe and identify each such DOCUMENT by stating in writing: (a) the name(s) of the authors(s), the name(s) of the PERSON(S) who received the original and all copies; (b) the date and subject matter of the original

and all copies; (c) the last known custodian of the DOCUMENT; (d) the incident, event, or occurrence during which such DOCUMENT was lost, destroyed, or otherwise became unavailable; (e) each PERSON having knowledge of the circumstances of it being lost, discarded or destroyed; and (f) YOUR efforts to locate each such DOCUMENT.

5. YOU are instructed to respond to each Interrogatory in full, and to base YOUR response upon all non-privileged information in YOUR possession, custody, or control, including information in the possession, custody, or control of YOUR representatives, employees, agents, or attorneys.

6. In the event any information is withheld on a claim of privilege or otherwise, describe the nature and basis for YOUR claim, identify the requested information that is being withheld with sufficient particularity to enable a claim of privilege or immunity to be adjudicated, including by identifying the author or originator, the addressees and/or recipients, the date, the nature and general subject matter of the document or information, the present custodian and location (if applicable), and cite any authority which YOU assert supports any claim of privilege or immunity. If a legal objection based on a claim of privilege or immunity form disclosure applies only to a part of an Interrogatory, but not to its entirety, then state the part to which the claim of privilege or immunity applies and respond to the remainder of the Interrogatory.

7. If, in answering these Interrogatories, YOU claim any ambiguity in interpreting either the Interrogatory or a definition or instruction applicable thereto, such claim shall not be utilized by YOU as a basis for refusing to respond. Rather, YOU shall set forth in a part of YOUR response to such an Interrogatory the language deemed to be ambiguous and the interpretation chosen or used in responding to the Interrogatory.

8. YOU shall respond completely to each Interrogatory, setting forth the question in

full followed by each answer.

9. Questions regarding the interpretation of these Interrogatories should be resolved in favor of the broadest possible construction.

10. These Interrogatories are to be considered as continuing and YOU are requested to provide, by way of supplementary responses hereto, such additional information as YOU or any persons acting on YOUR behalf may hereafter obtain that will augment, clarify, or otherwise modify the responses now given to these Interrogatories. Such supplementary responses are to be served upon counsel for Defendant within thirty (30) days after receipt of such information or DOCUMENTS.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

State whether MARVEL paid Stan Lee by the page (at a set page rate) for the WORKS for which he received writing credit, and if so, which MARVEL entity paid him for these WORKS, respectively.

**INTERROGATORY NO. 2:**

State whether MARVEL paid Stan Lee as a freelancer for his writing services on those WORKS for which he received writing credit.

**INTERROGATORY NO. 3:**

Why were the copyrights to *Tales to Astonish* Vol. 1, Nos. 36-43 and 46-58, *Strange Tales* Vol. 1, Nos. 101-148, *Tales of Suspense* Vol. 1, Nos. 34-36, 38, 40, 41-47, 50-72, and 80, and *Avengers* Vol. 1, Nos. 9-15, 17-40, and 45 initially registered in the name of Vista Publications, Inc.?

**INTERROGATORY NO. 4:**

Why was the copyright to *Avengers* Vol. 1, No. 47 initially registered in the name of Vista Publications, Inc. and Marvel Comics Group?

**INTERROGATORY NO. 5:**

Why was the copyright to *Amazing Spider-Man Annual* Vol. 1, No. 3 initially registered in the name of Non-Pareil Publishing Corporation?

**INTERROGATORY NO. 6:**

Why was the copyright to *The X-Men* Vol. 1, No. 45 initially registered in the name of Canam Publishers Sales Corporation and Marvel Comics Group?

**INTERROGATORY NO. 7:**

Why were the copyrights to *Iron Man* Vol. 1, Nos. 26-37 initially registered in the name of Magazine Management Co., Inc. and Marvel Comics Group?

**INTERROGATORY NO. 8:**

Why were the copyrights to *Journey Into Mystery* Vol. 1, Nos. 84-104 initially registered in the name of Atlas Magazines, Inc.?

**INTERROGATORY NO. 9:**

IDENTIFY which MARVEL entity paid LIEBER for each of the LIEBER WORKS.

**INTERROGATORY NO. 10:**

IDENTIFY the AGREEMENT, if any, INCLUDING the parties thereto and its date, which gave MARVEL the right to control LIEBER's creation of the LIEBER WORKS.

**INTERROGATORY NO. 11:**

In the event MARVEL rejected a page created by LIEBER for a MARVEL comic book, did MARVEL still pay him for the rejected page?

**INTERROGATORY NO. 12:**

In the event MARVEL asked LIEBER to redraw or revise a page created by LIEBER for a MARVEL comic book, did MARVEL pay LIEBER double his page rate, i.e., for both the original page and the redrawn or revised page?

**INTERROGATORY NO. 13:**

Did Vista Publications, Inc. pay LIEBER for any of the WORKS for which the copyright was originally registered in the name of Vista Publications, Inc., and, if so, which WORKS?

**INTERROGATORY NO. 14:**

Did Atlas Magazines, Inc. pay LIEBER for any of the WORKS for which the copyright was originally registered in the name of Atlas Magazines, Inc. and, if so, which WORKS?

**INTERROGATORY NO. 15:**

State whether MARVEL paid for, or supplied LIEBER with the materials and/or instruments (e.g., pencils, pens, ink, brushes, and/or paper) used by him to create the LIEBER WORKS and, if so, which MARVEL entity did this.

**INTERROGATORY NO. 16:**

IDENTIFY all AGREEMENTS (by the title, the parties, and date), INCLUDING employment AGREEMENTS, between MARVEL and LIEBER during the years 1960 to 1970.

**INTERROGATORY NO. 17:**

If MARVEL alleges that it provided LIEBER with a synopsis, plot and/or outline for any of the WORKS prior to LIEBER's creation of the LIEBER WORK for such WORK, IDENTIFY such synopsis, plot, and/or outline.

**INTERROGATORY NO. 18:**

If YOU contend that any of the LIEBER WORKS were created at the "instance" of a

MARVEL entity, IDENTIFY the MARVEL entity which had the right to direct and supervise LIEBER's creation of such LIEBER WORK.

Date: May 6, 2022                    By:  */s/ Marc Toberoff*
                                                Marc Toberoff
                                       TOBEROFF & ASSOCIATES, P.C.
                                       *mtoberoff@toberoffandassociates.com*
                                       23823 Malibu Road, Suite 50-363
                                       Malibu, CA 90265
                                       Tel: (310) 246-3333; Fax: (310) 246-3101

                                       *Attorneys for Lawrence D. Lieber*

## PROOF OF SERVICE

I, Jaymie Parkkinen, declare:

I am over the age of eighteen years and not a party to the within action. I am a resident of or employed in the county where the service described below occurred. My business address is 23823 Malibu Road, Suite 50-363, Malibu, CA 90265. On May 6, 2022, I caused the following document:

**DEFENDANT LIEBER'S FIRST SET OF INTERROGATORIES TO MARVEL**

to be served as follows:

[ ]   **BY ELECTRONIC MAIL** -  I caused the above-described document to be served by electronic mail transmission on the interested parties noted below, where an electronic mail address is indicated.

[x]   **BY MAIL** – I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence collected from me would be processed on the same day, with postage thereon fully prepaid and placed for deposit that day with the United States Postal Service. On May 6, 2022, I put a true and correct copy of the above-referenced document in a sealed envelope, with postage fully prepaid, and placed the envelope for collection and mailing today with the United States Postal Service in accordance with the firm's ordinary business practices, addressed as follows:

-13-

| | |
|---|---|
| Daniel M. Petrocelli<br>dpetrocelli@omm.com<br>Molly M. Lens<br>mlens@omm.com<br>Danielle Feuer<br>dfeuer@omm.com<br>O'MELVENY & MYERS LLP<br>1999 Avenue of the Stars, 8th Floor<br>Los Angeles, California 90067 | Allen W. Burton<br>aburton@omm.com<br>O'MELVENY & MYERS LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br><br>Kendall Turner<br>kendallturner@omm.com<br>O'MELVENY & MYERS LLP<br>1625 I Street NW<br>Washington, DC 20006 |

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on May 6, 2022, at Malibu, California.

                                                    */s/ Jaymie Parkkinen*
                                                         Jaymie Parkkinen