# EXHIBIT 10

AGREEMENT made this  28th  day of June, 1968, among
PERFECT FILM & CHEMICAL CORPORATION, a corporation organized and existing
under the laws of the State of Delaware (hereinafter referred to as
"Perfect"), party of the first part; MARTIN GOODMAN and JEAN GOODMAN, his
wife, residing at [ Redacted - PII ]
(hereinafter collectively referred to as the "Stockholders"), parties of
the second part, ANIMATED TIMELY FEATURES, INC., ATLAS MAGAZINES, INC.,
BARD PUBLISHING CORP., CANAM PUBLISHERS SALES CORP., INTERSTATE PUBLISHING
CORP., LEADING MAGAZINE CORP., MALE PUBLISHING CORP., NEWSSTAND PUBLICATIONS,
INC., NON-PAREIL PUBLISHING CORP., OFFICIAL MAGAZINE CORP., OLYMPIA
PUBLICATIONS, INC., VISTA PUBLICATIONS, INC., ZENITH BOOKS, INC., AMERICANS
MAGMAN SALES CORP., MAGMAN EXPORT CORP., MAGAZINE MANAGEMENT CO., INC.,
MARVEL COMICS, INC. and TIP TOP PUBLICATIONS, INC., all New York corporations,
with offices at 625 Madison Avenue, New York (said corporations being
collectively referred to herein as the "Active Corporations"), parties of
the third part, and ATLAS NEWS CO., INC., CHIPIDEN PUBLISHING CORP.,
CORNELL PUBLISHING CORP., EMGEE PUBLICATIONS, INC., GEM PUBLICATIONS, INC.,
HERCULES PUBLISHING CORP., JAYGEE PUBLICATIONS, INC., MANVIS PUBLICATIONS,
INC., MARGOOD PUBLISHING CORP., MEDALION PUBLISHING CORP., MUTUAL MAGAZINE
CORP., PRIME PUBLICATIONS, INC., RED CIRCLE MAGAZINES, INC., SPHERE
PUBLICATIONS, INC., TIMELY COMICS, INC., 20th CENTURY COMICS CORP.,
WALDEN PUBLISHING CO., INC., WARWICK PUBLICATIONS, INC., and WESTERN FICTION
PUBLISHING CO., INC., all New York corporations, with offices at 625 Madison
Avenue, New York, New York (said corporations being collectively referred to
herein as the "inactive Corporations"), parties of the fourth part, (the
Inactive Corporations and the Active Corporations being collectively referred
to herein as the "Sellers").

-1-

W I T N E S S E T H:

WHEREAS, Sellers desire to transfer to Perfect and Perfect desires to acquire from Sellers, upon the terms and subject to the conditions herein set forth, certain of the property and assets and business of Sellers more particularly described herein in exchange for 5% Subordinate Notes of Perfect and cash,

NOW, THEREFORE, the parties hereto agree as follows:

ARTICLE I.    Representations and Warranties by Sellers and Stockholders.

A.    Each of the Sellers is a corporation duly organized, validly existing and in good standing under the laws of the State of New York; has power to own all of its properties and assets and to carry on its business as it is now being conducted; and, subject to the approval of its stockholders, has corporate power to convey, assign and transfer its business and the properties and assets specified in this Agreement.  The Board of Directors and stockholders of each of the Sellers have taken all action required by law, their charters, their by-laws or otherwise to authorize the execution, delivery and consummation of the Agreement and the transfer to Perfect of the properties and assets and the business of the Sellers described herein.

B.    The Sellers own free and clear of any liens, claims, charges, options or encumbrances (other than for current taxes not delinquent) all of the tangible or intangible personal property being conveyed hereunder, except for the trademarks and copyrights which are covered by paragraphs P and R of this Article I or except as otherwise set forth herein or in the Schedules attached hereto.

-2-

2021MARVEL-0047306

C.  None of the Sellers is a party to any material lawsuit, except as stated herein in Schedule A.  There are no material actions, suits or proceedings pending or, to the knowledge of the Sellers or Stockholders, threatened against or adversely affecting Sellers or the Stockholders or the properties, business or business prospects of the Sellers or which would prevent or hinder the consummation of the transactions contemplated hereby except as stated in Schedules A and D hereof and none of the Sellers or Stockholders is threatened with or under investigation with respect to, any violation of any provision of any federal, state or local law or administrative ruling or regulation relating to any aspect of its business.

D.  Liabilities, Contracts, Defaults.  Attached hereto as Schedule B are schedules describing (1) as of June 28, 1968, all debts, liabilities and obligations, absolute or contingent, of Sellers which are recorded on their books under the categories of the liabilities being assumed hereunder by Perfect (other than those fully reflected or reserved against on the said Balance Sheet as of January 31, 1968, or as incurred in the ordinary course of business since that date) and (2) as of the date hereof all contracts, agreements, arrangements or other understandings, and all decrees, orders, and other requirements of governmental bodies, to which any of the Sellers is a party or by which any of them is bound and which all or any of the Sellers would be required to file as exhibits if on the date hereof they or it were filing a registration statement on Form S-1 with the Securities and Exchange Commission.  Except as set forth in said Schedule B, all of such contracts, agreements, arrangements or other understanding may validly be assigned by Sellers to Perfect hereunder.  No Seller is in default

(3)

2021MARVEL-0047307

(and no event has occurred which with the passage of time or giving of notice would mature into a default) under the terms of any of such contracts, agreements, arrangements, understandings, decrees or orders.

E.  Financial Statements. Attached hereto as Schedule C is a combined balance sheet of the Active Corporations as of January 31, 1968, ("The Balance Sheet"), which does not reflect the merger of Woodmere Construction Company into one of the Sellers or the existence of Empire State Consolidated Advertising Corp. (which has been dissolved).  Except for the above, the Balance Sheet has been prepared in accordance with generally accepted accounting principles and is true, correct and complete.  The consolidated net income of Sellers before provision for Federal, State or City income taxes for the past four fiscal years (using in the case of Magazine Management Company, Inc., prior to January 31, 1968, its predecessor in interest, Magazine Management Company, a New York partnership), excluding any income or loss from or connected with Sellers investment in Woodmere Construction Company or any real estate transaction or mortgages or real estate in Florida, was at least equal to the amount set forth below

| Fiscal Year Ended January 31 | Income |
|---|---|
| 1968 | $1,400,000 |
| 1967 | 1,100,000 |
| 1966 | 1,150,000 |
| 1965 | 950,000 |

Except as expressly set forth in this Agreement, no representations or warranties whatever are made with respect to the financial statements or any information set forth or reflected therein.

-4-

2021MARVEL-0047308

F.  Except as set forth herein or in the Schedules hereto, and except as relates to the Seller's investment in the real estate in Florida, since January 31, 1968, there has not been (1) any materially adverse change in the financial condition, business, properties or assets of any of the Sellers; (2) any fact which has come to the attention of Sellers or Stockholders which would reflect materially adversely on the business prospects of Sellers or on Perfect's business prospects with respect to the business being purchased pursuant hereto (3) any damage, destruction or loss (whether or not covered by insurance) materially and adversely affecting any of the property or business of any of the Sellers (4) any increase in the compensation payable or to become payable by any of the Sellers to any of its officers, employees or agents over the amount paid to them at January 31, 1967 other than normal merit increases or increases required under union contracts; or (5) any material amendment or termination of any material contract, agreement or license to which any of the Sellers is a party or by which any of them is bound.

G.  Sellers have in full force and effect policies of insurance of the types and in the amount set forth in Schedule E hereto attached.

H.  Sellers have outstanding various powers of attorney, but Sellers covenant and agree that such powers of attorney will not be used in any way to adversely affect any of Perfect's rights or rights in ownership of the assets being acquired by it hereunder and agree that Sellers shall take all necessary action to assure that such powers are not so used.

I.  The Sellers and Stockholders represent and warrant that they are acquiring and will acquire all of the 5% Subordinate Notes of Perfect and the shares of common stock into which they may be converted for investment purposes only and with no view to the further sale or distribution thereof, and

-5-

2021MARVEL-0047309

agree that they will not sell or transfer such Notes or shares in any way
which would violate, or cause their issuance by Perfect pursuant hereto
or on conversion of the Notes to be in violation of, the Securities Act of
1933. Said notes and shares will have an appropriate legend thereon reflecting
that they have not been registered under the Securities Act of 1933, as
amended.

       J.  Except as disclosed or permitted by the terms of this Agreement
or in the Schedules hereto, since January 31, 1968, none of the Sellers has:

       1.  incurred any obligation or liability except in the ordinary course
of its business or except with respect to Seller's investment in Florida real
estate;

       2.  sold or transferred any other assets or cancelled any debts or claims
except in the ordinary course of business or except for sales of real estate in
Florida;

       3.  entered into any transaction other than in the ordinary course of
business except for Florida real estate transactions;

       4.  disposed of or permitted to lapse any major trademarks or trade names
or applications therefor in the United States;

       K.  <u>No violation.</u>  The execution and/or consummation of this
Agreement and the fulfillment of the terms hereof will not conflict with,
violate or result in a breach of or constitute a default under any provision
of the Certificate of Incorporation or By-Laws of any of Sellers, or any
note, indenture, mortgage, lien, lease, agreement, contract, instrument, order,
judgment, decree, ordinance, regulation or any other restriction of any kind or

-6-

character, to which any property of any of Sellers is subject or by any of Sellers is bound, or any law or order, rule, regulation, writ or injunction of any governmental body having jurisdiction over any of Sellers, or its properties, assets or rights, or result in the creation or imposition of any lien, charge, or encumbrance of any kind whatsoever on any of such properties, assets or rights or on the free right to use and enjoy the same, except as otherwise specifically set forth in this Agreement or the Schedules hereto.

L.    Neither this Agreement nor the various Schedules hereto contain any untrue statement or statements of a material fact or facts and Sellers have not withheld from Perfect or omitted to state herein any material fact which would have a materially adverse effect on the financial condition, business affairs or business prospects of any of Sellers.

M.    All of the real and personal property of Sellers presently used in their operations are in good operating condition and repair and conform with all applicable ordinances and regulations and building, zoning and other laws, as does the use to which the properties are put and the business conducted thereon.

N.    Sellers have complied with all laws, regulations and ordinances applicable to and materially affecting the conduct of their business.

- 7 -

2021MARVEL-0047311

O.  All accounts receivable and other receivables of Sellers being conveyed to Perfect pursuant hereto are valid and collectible, except to the extent reserved against in a manner consistent with the reserves reflected in the Balance Sheet, and are not subject to any right of set-off or counter-claim.

P. 1)  The Sellers warrant that it is their ordinary and usual practice to secure their rights to the material which they publish by giving notices of copyright and by registering their claims to copyright with the Register of Copyrights.  No lawsuits or adverse claims are pending against such publishing and registering of claim to copyright by the Sellers except as is set forth or referred to herein or in the schedules hereto attached.

2)  The Sellers warrant that in publishing their material they have not, except insofar as they have had the right or license to do so, infringed the copyrights of any other person.

3)  Sellers agree that they will execute assignments of all their copyrights both registered and unregistered to Perfect without cost to Perfect provided however that Perfect shall prepare and file such assignments at the sole expense of Perfect.

Q. 1)  The Sellers do business under their own names,

2021MARVEL-0047312

and under the names Marvel and Marvel Comics Group, sometimes abbreviated M.C.G., and certificates for the conducting of business under these assumed names have been filed with the County Clerk and Clerk of the Supreme Court for New York County. There are no pending lawsuits or adverse claims which challenge the Sellers' right to use these names in their business, and ~~that~~ the names Marvel, Marvel Comics Group and M.C.G. and the good will associated therewith are to be assigned to Perfect.

R. 1)  The Sellers warrant that they have duly filed trademark applications in the United States Patent Office or have secured trademark Registrations from the United States Patent Office as specified in Schedule F attached hereto. Sellers warrant that they currently own each of said United States applications and registrations specified in Schedule F annexed hereto and that Sellers have not done or caused to be done any act since January 28, 1967 which has resulted in the abandonment or loss of trademark rights to said trademarks applications and Registration in the United States which Perfect has not specifically been advised of herein.

2)  Sellers agree to assign and transfer to Perfect ~~of~~ their trademark registrations and applications and all of their good will and other business assets associated therewith, at Perfect's expense.

-9-

2021MARVEL-0047313

3)  Sellers agree to provide Perfect within 30 days from the date of this contract, with a complete list of all currently active United States trademark registrations and applications and will use their best efforts to supply a similar list for foreign trademark applications and registrations owned by Sellers which lists are to include:

a: Registration number or application number

b: Date of registration or application

c: Current status of registration or application

4)  Trademark applications have been filed and trademark registrations secured on certain of the Sellers' trademark rights in foreign countries.  Said applications and registrations are also set forth in Schedule F attached hereto.

5)  The Sellers warrant that they have not filed any of the aforesaid trademark applications, secured any of the aforesaid trademark registrations or used any of the trademark rights therein described by consent of any other rightful owner thereof except as provided in Schedule D attached hereto and the same are free and clear of any attachments of liens.

6) There are no claims or demands of any other

-9A-

2021MARVEL-0047314

person, firm or corporation (including attorneys fees for past services, expense and government fees, excepting only for those recently incurred in the ordinary course of business) pertaining to the aforesaid trademark applications and registrations and the trademark rights described therein and no proceedings have been instituted, are pending or to the knowledge of Sellers threatened which challenge Sellers' rights in respect thereof, except as set forth in Schedule D attached hereto, and none infringe the trademarks, or trademark registrations of others in the United States and none is subject to any outstanding order, decree, judgment or stipulation.

-9B-

2021MARVEL-0047315

Article II.  REPRESENTATIONS AND WARRANTIES OF PERFECT.

A.  Perfect is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and has full corporate power to carry on the businesses in which it is now engaged, to enter into and perform this Agreement, to issue the Notes and to comply with the terms thereof.

B.  The authorized capital stock of Perfect consists of 295,000 shares of preferred stock, par value $50 per share, and 6,000,000 shares of common stock, par value $1.20 per share.  The outstanding capital stock of Perfect is as follows:

    4,160 shares of $3.50 Convertible Preferred Stock, Series A

    45,000 shares of $3.50 Convertible Preferred Stock, Series B

    _____ shares of Common Stock.

The shares of Common Stock of Perfect that are issuable upon conversion of the Notes in accordance with the terms thereof will, when so issued, be validly issued, fully paid and non-assessable, and not subject to any preemptive rights of holders of other securities of Perfect.

C.  Copies of the following documents have been marked for identification and delivered to Counsel for Sellers:  (1)  the prospectus of Perfect dated May 6, 1968 (the "Prospectus") comprising part of registration statement No. 2-28391 (the "Registration Statement"); and (2) the proxy statement of Perfect, dated May 6, 1968 (the "Proxy Statement").  All such copies are complete and correct.

D.  As of the effective date (May 6, 1968) of the Registration Statement, it did not contain an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading, and the Proxy Statement as of such date did not contain any statement which is false or misleading with respect to any material fact,

-10-

2021MARVEL-0047316

materiality being determined with respect to a purchaser of
the Notes.

      E.  Since May 6, 1968, there has been no materially
adverse development in the business or finances of Perfect
that is not disclosed in the Prospectus, the Proxy Statement
or this Agreement.  Since said date there has been no litigation
initiated or threatened against Perfect or which would adversely
affect property owned by Perfect except litigation which in
the opinion of counsel for Perfect is not material.

      F.  The execution and performance of the Agreement,
the issuance of the Notes and compliance with the terms
thereof by Perfect will not violate, or constitute a default
under, any agreement, contract or other instrument by which
Perfect is bound.

## III.  TERMS OF TRANSACTION

      Based upon the representations, warranties and agree-
ments of the Sellers and Stockholders and of Perfect, and
subject to the terms and conditions herein stated, Sellers
and Perfect agree that on the Closing hereof:

      A.  The Sellers shall transfer to Perfect at the
Closing all of the Sellers assets as they may exist on
the books and records of Sellers on June 28, 1968 which
fall in the following categories listed on the Balance

2021MARVEL-0047317

Sheet (where a sub-category is specifically listed under a major category, only the assets contained in the sub-category are intended to be transferred and not the assets contained in the major category):

Accrued Income Receivable & Other

    Royalties

Loans Receivables

    Grantray Lawrence

Accrued Income Receivable - Independent

    Gross Receivables on Unsettled Issues
    Less:  Allowance for Returns
             Advances

Miscellaneous Deposits

Inventories:  Stories and Pictures

    Comic Material
    Paper and Cores

Furniture and Fixtures - net of depreciation

Titles and Copyrights

Deferred Costs

-11A-

2021MARVEL-0047318

In addition, the Sellers shall transfer to Perfect at the Closing all of their contracts, licenses, agreements, leases for office space, insurance policies, goodwill, products in process, trademarks and any other assets which specifically relate in any way to their publishing business or to the income to be derived therefrom. It is understood that Sellers shall not transfer to Perfect as part of this transaction any cash, savings accounts or checking accounts, any accrued interest, any employee loans, any inter-company receivables between the Sellers, any of the assets carried in Office and Special Art Work on the Balance Sheet, any rights to any amount shown under Due on Overpayment of State and City Taxes on the Balance Sheet or any of their investment in Woodmere Construction Co. or in any real estate or mortgages on real estate in Florida or any assets unrelated to the publishing business or to the income to be derived therefrom.

B.    As consideration for the conveyance, transfer and assignment referred to in Paragraph A of Article III Perfect will at the Closing:

1.    deliver to Martin Goodman, as agent for the Sellers, $7,000,000 in cash, or certified or bank cashier's check payable to his order,

2.    issue and deliver to Martin Goodman, as agent for Sellers, Perfect's 5% Subordinated Notes (the "Note") in the principal amount of $2,000,000 due June 15, 1988, a copy of said Note being attached hereto as Schedule C, Exhibit A and

-12-

3.  (a) assume all obligations of Sellers under any and all contracts, licenses or other agreements which are disclosed or identified in this Agreement or the Schedules hereto and which are in existence on the Closing Date and Perfect will assume and agree to pay or to discharge all liabilities and obligations of Sellers existing at the Closing Date which represent obligations or liabilities (i) specifically being assumed hereunder, or (ii) which are reflected on Sellers books and records on the Closing Date and which fall in the following categories listed on the Balance Sheet (where a sub-category is specifically listed under a major category, only the liabilities contained in the sub-category are intended to be assumed by Perfect and not the liabilities contained in the major category):

Current Liabilities:

    Accounts Payable
    Accrued Payroll Payable
    Payroll Taxes Withheld and Payable
    Accrued Costs Payable
    Accrued Expenses Payable
    Advances From Independent News

Other Liabilities and Deferred Credits

    Distributions Payable - Subscriptions
    Deferred Income

(b)  Provided, however, that Perfect does not assume nor shall it for any purpose be deemed to have assumed any obligations or liabilities of Sellers, (i) representing Sellers' expenses in connection with the consummation of this Agreement, (ii) arising out of any misrepresentations or breach of any warranties of Sellers contained herein or the failure of any of the Sellers to perform any of their agreements contained herein, (iii) arising out of or incurred in respect of any transaction occurring after the date

-13-

2021MARVEL-0047320

hereof, (iv) arising out of or incurred in respect of any transaction with stockholders, (v) for any Federal or State income tax liabilities or penalties with respect thereto of Sellers, or (vi) (except as expressly assumed under paragraph 3 (a) above) in connection with any claims or lawsuits pending or subsequently filed for liabilities or causes of action arising prior to the date hereof, including without limitation the lawsuits referred to in Schedule A hereto (except that as to the lawsuits referred to in the letter of Kenyon & Kenyon, Esquire, attached as a part of Schedule D attached hereto, Perfect will pay the first $25,000 of legal fees and expenses rendered or incurred subsequent to the date hereof, but no further legal fees or expenses or any other liabilities arising out of or in connection with said lawsuits)

Subject only to the limitation that each of Sellers shall receive from the proceeds of sale of its assets hereunder an amount of consideration at least equal to the fair market value of the assets conveyed by it to Perfect, the Sellers may, as among themselves and solely for their own convenience, without having any effect on Perfect or its accounting treatment of the transactions, allocate the aggregate consideration received in such fashion as they desire.  Each of the Sellers hereby acknowledge the receipt of the foregoing consideration and the adequacy thereof in exchange for its assets transferred hereunder.

C.    In order to effectuate the conveyances, transfers and assignments contemplated by Paragraph A of this Article III, Sellers will execute and deliver at the closing, all such deeds, bills of sale and other documents or instruments of conveyance, transfer or assignment as shall be necessary or

-14-

appropriate to vest in or to confirm in Perfect full and complete title
to all of its properties, assets and business which under this Agreement are
to be conveyed, transferred and assigned, all of which documents shall be in
form and substance satisfactory to counsel for Perfect.  Subsequent to the
Closing Date, Sellers will execute and deliver from time to time at the
request of Perfect all such further instruments of conveyance, assignments and
further assurance as may be required in order to vest in and confirm to
Perfect full and complete title to and the right to use and enjoy the properties,
assets, contracts and business hereby agreed to be and intended to be conveyed to
it pursuant hereto.

Article IV.   CLOSING

     Consummation of the transactions contemplated by Article III shall be
effected immediately following the execution hereof on June 28, 1968 (herein
referred to as the "Closing"). For accounting purposes of Perfect the Closing shall
be deemed to have occurred May 10, 1968.

-15-

V.  DETERMINATION OF AGGREGATE NET WORTH TRANSFERRED

After the Closing, Sellers shall cause Lybrand, Ross Bros. & Montgomery ("Lybrand") to determine the Aggregate Net Worth Transferred to Perfect (i.e. the difference between the value of the assets conveyed as valued on the books and records of Sellers and the amount of the liabilities assumed by Perfect as reflected on the books and records of Sellers ) on the Closing Date hereof in the manner hereinafter provided. In making its determination Lybrand shall follow generally accepted accounting principles applied on a basis consistent with that followed in preparing the combined Balance Sheet of the Active Corporations at January 31, 1968. Lybrand shall take into account the assets conveyed to Perfect hereunder and the liabilities assumed by Perfect hereunder at their values as reflected on the books and records of Sellers, except that no depreciation or amortization shall be taken on the assets conveyed from January 31, 1968 through the date hereof. Lybrand shall render its report in duplicate to Sellers and Perfect not later than September 30, 1968 and such report shall set forth Lybrand's determination of the Aggregate Net Worth Transferred pursuant hereto in a single dollar amount.

If the Aggregate Net Worth Transferred as reflected by the Lybrand report shall be less than $900,000, Sellers and stockholders jointly and severally shall pay to Perfect in cash the difference between the amount of the Aggregate Net Worth Transferred as determined by the Lybrand report and $900,000 not later than December 31, 1968.

2021MARVEL-0047323

VI.    INDEMNIFICATION AND SURVIVAL OF REPRESENTATIVES AND WARRANTIES

A.    The representations, warranties, and agreements of the parties hereto shall survive the consummation of the transactions provided for in this Agreement with the same force and effect as made on the Closing Date, regardless of any investigation or inspection made by or on behalf of the parties hereto.

B.    If after Closing any demand shall be made upon Perfect for the payment of any amount on account of any debt, obligation, liability, contract, agreement, arrangement or other undertaking of any of Sellers which Perfect shall not have assumed hereunder resulting from events occurring prior to the date hereof, or if any action, suit or other proceeding arising from any alleged facts, actions, omissions, or course of business of any of Sellers which shall have occurred prior to the date hereof and which shall not have been disclosed herein or in the Schedules hereto, shall be commenced or threatened against Perfect (including, but not limited to, demands, proceedings or threatened proceedings by state or federal taxing authorities), Sellers and the Stockholders jointly and severally will indemnify and save harmless Perfect from any and all reasonable and necessary expenses, liabilities or obligations whatsoever connected with or arising out of such demand, proceeding or threatened proceeding, including the reasonable and necessary expense of investigating and satisfying or defending against any such valid demand, proceeding or threatened proceeding and of paying any judgment, fines or other sums which may be assessed or agreed upon as a result thereof or in connection therewith.

Whenever Perfect shall receive written notice of such a demand, action, suit, proceeding or threatened proceeding, Perfect will promptly mail to Sellers a notification thereof. If Perfect shall have received from Sellers within twenty

17

2021MARVEL-0047324

the
days after/mailing by Perfect of such notification, a statement of its intent to

contest the validity of the demand, proceeding or threatened proceeding, or to

contest the amount of the payment demanded, then Sellers may, at their expense,

take such steps as they shall consider advisable in connection with such contest,

and Perfect will afford them and their authorized representatives such co-operation

and such access to Perfect's and Seller's books and records as Sellers shall

reasonably request. If (1) within such twenty (20) day period Sellers shall not so

notify Perfect of their intention to contest, or (2) if such demand shall be contested

by Sellers but such contest shall be unsuccessful or abandoned, and if Perfect

makes any reasonable payment because of or with respect to such demand or

demands, Sellers and/or the Stockholders will promptly deliver to Perfect an amount

in cash equal to the amount of the payment made.

C.    Sellers and the Stockholders jointly and severally agree after Closing

to indemnify and hold harmless Perfect from any amount which Perfect shall be

required to pay or any loss it shall suffer as a result of or arising from an untrue,

incorrect representation or warranty of Sellers or Stockholders herein, or the

failure, refusal or inability of any of them to perform any of their agreements

contained in this Agreement in the manner set forth herein. Perfect shall promptly

inform Sellers in writing of any claim it shall have hereunder and, in the event that

Sellers elect to contest the validity or amount of such claim, Perfect will afford

Sellers and their duly authorized representatives such co-operation and such access

to the books and records of Perfect as Sellers shall reasonably request. The

indemnification to which Perfect shall be entitled hereunder shall also extend to

and protect and hold it harmless from any loss which it may reasonably incur in

connection with the investigation, defense or settlement of any matter arising out

of or in connection with any valid claim made hereunder.

18

D.    In the event of the failure of Sellers to give notice of their intention to contest any demand, proceeding or threatened proceeding referred to in subparagraph (B) or (C) of this Article VI within twenty (20) days following the date of mailing by Perfect of the notice prescribed in such subparagraphs, or in the event such notice shall be given by Sellers to Perfect within the prescribed time, but Sellers shall not diligently pursue their contest of such demand, proceeding or threatened proceeding or claim, Perfect shall have the right to litigate, contest, compromise or settle such demand, proceeding or threatened proceeding or claim, provided, however, that if Perfect shall determine to compromise or settle any such demand, proceeding or threatened proceeding or claim, it shall give to Sellers thirty (30) days' notice of the terms of such compromise or settlement proposed to be made by it and if Sellers do not object thereto within thirty (30) days from the date of mailing such notice, Perfect shall have the right to consummate such compromise or settlement in accordance therewith; and provided further that if the Sellers do object within such thirty (30) day period to Perfect's proposed compromise or settlement, they shall forthwith resume the contest of such demand, proceeding or threatened proceeding or claim and, if they shall thereafter fail diligently to pursue such contest, Perfect shall have the absolute right to litigate, contest, compromise or settle such demand, proceeding or threatened proceeding or claim as it, in its sole discretion, deems appropriate.

E.    Perfect hereby undertakes to use its reasonable efforts to minimize any loss which Sellers or Stockholders may incur hereunder, provided, however, that Perfect shall not be obligated to prejudice the conduct of its business in connection with its efforts to minimize Sellers' and Stockholders' losses hereunder.

19

2021MARVEL-0047326

F.    Sellers and Stockholders shall have no obligation to Perfect with respect to any claim or demand which Perfect shall otherwise have against either or both of them hereunder unless such claim or demand shall be made against them, or either of them, by Perfect hereunder within fifteen (15) years from the date hereof.

G.    Perfect's remedies under this Agreement shall be limited to those set forth above and, except for and to the extent that an action is based upon allegations of fraud, Perfect shall have no right to request recision of the within transaction.

20

2021MARVEL-0047327

VII.  COVENANTS OF SELLERS AND STOCKHOLDERS

A.  Sellers represent and warrant that no change has been made in any of their respective accounting procedures nor has any revaluation been made of any of their assets or any write-offs with respect to any of their liabilities for bookkeeping purposes since January 31, 1968, nor will any such revaluation be made or write-offs taken prior to the Closing or in connection with the recording of their assets and liabilities on their books and records for the purposes or in connection with the determination of aggregate net worth to be prepared by Lybrand pursuant hereto.

B.  Not later than July 12, 1968 Sellers and Stock-holders will cause to be executed and delivered to Perfect employment contracts, between Perfect or one of its sub-sidiaries and Martin Goodman, Stan Lee and John Hayes, such employment contracts to be for a period of five (5) years, at salaries not to exceed in the aggregate $170,000 and to contain such other terms and conditions, including without limitation covenants not to compete as Perfect may request, and shall be acceptable in form and substance to Perfect and its counsel.

-21-

2021MARVEL-0047328

Article VIII.    MISCELLANEOUS

8.1    Brokers.    Sellers, Stockholders and Perfect hereby severally declare that no broker or finder has been employed by any of them except Oppenheimer & Co., whose fee shall be paid by Perfect, and Michael E. Schultz, Esquire, whose fee shall be paid by Sellers.

8.2    Governing Law.    This Agreement shall be construed in accordance with the laws of the State of New York.

8.3    Notices.    Any notices or other communications required or permitted hereunder shall be sufficiently given if sent by certified mail, postage prepaid, addressed as follows:

>       To Perfect:
>
>       Perfect Film & Chemical Corporation
>
>       1615 Northern Boulevard
>
>       Manhasset, New York          Attention: Martin S. Ackerman, President
>
>       To Sellers:
>
>       Martin Goodman
>
>       c/o Magazine Management Company, Inc.
>
>       625 Madison Avenue, New York, New York

or such other addressee as shall be furnished in writing by either party, and such notice or communication shall be deemed to have been given as of the date so mailed.

8.4    Binding Agreement,    This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

- 22 -

2021MARVEL-0047329

8.5    Entire Agreement.    This agreement states the entire agreement of the parties, merges all prior negations, agreements and under-standings, if any there be, and states in full all representations and warranties which have induced the Agreement, there being no representations or warranties other than those stated herein.

8.6    Covenant Not to Compete.    Each of Sellers agrees that for a period of five (5) years after the Closing hereof it will not directly or indirectly, alone, in concert with others, compete with Perfect or any of its parents, subsidiaries or related corporations engaged in a similar or related business to that carried on by Sellers prior to the Closing. Said covenant not to compete shall cover all geographical areas in which each of Sellers shall be doing business at the Closing Date. Further Sellers agree not to use or make use of (directly or indirectly) Sellers' customers lists, nor to divulge the names of any of Sellers' customers to anyone during the said Five (5) year period.

8.7    Change of Name.    Forthwith and from time to time following the Closing the Sellers and the Stockholders shall take such action and execute such documents and certificates as Perfect shall deem necessary in order to change the names of such of Sellers as Perfect may request in accordance herewith and to enable Perfect or one of its subsidiaries to make use of, and trade under the names of Sellers, at Perfect's expense.

8.8    Counterparts.    This Agreement may be executed in one or more counterparts, all_____

- 23 -

2021MARVEL-0047330

of which taken together shall constitute one and the same documents.

IN WITNESS WHEREOF, each of the parties hereto has caused its
corporate seal to be hereunto affixed by its officers thereunto duly
authorized, as of the day and year first above written.

PERFECT FILM AND CHEMICAL CORP.

Corporate Seal

By _____
Martin S. Ackerman, President

ATTEST:

_____
Assistant Secretary

ATTEST:

By: _____
Martin Goodman

By: _____
Jean Goodman

ATTEST:

ANIMATED TIMELY FEATURES, INC.

By: _____

ATTEST:

ATLAS MAGAZINES, INC.

By: _____

ATTEST:

BARD PUBLISHING CORP.

By: _____

ATTEST:

CANAM PUBLISHERS SALES CORP.

By: _____

ATTEST:

INTERSTATE PUBLISHING CORP.

By: _____

ATTEST:

LEADING MAGAZINE CORP.

By: _____

ATTEST:

_Charles Goodman_

ATTEST:

_Charles Goodman_

ATTEST:

_Charles Goodman_

ATTEST:

_Charles Goodman_

ATTEST:

_Charles Goodman_

ATTEST:

_Charles Goodman_

ATTEST:

_Charles Goodman_

ATTEST:

_Charles Goodman_

ATTEST:

_Charles Goodman_

ATTEST:

_Charles Goodman_

ATTEST:

_Charles Goodman_

MALE PUBLISHING CORP.

By: _Martin Goodman_

NEWSSTAND PUBLICATIONS, INC.

By: _Martin Goodman_

NON-PAREIL PUBLISHING CORP.

By: _Martin Goodman_

OFFICIAL MAGAZINE CORP.

By: _Martin Goodman_

OLYMPIA PUBLICATIONS, INC.

By: _Martin Goodman_

VISTA PUBLICATIONS, INC.

By: _Martin Goodman_

ZENITH BOOKS, INC.

By: _Martin Goodman_

AMERICAS MAGMAN SALES CORP.

By: _Martin Goodman_

MAGMAN EXPORT CORP.

By: _Martin Goodman_

MAGAZINE MANAGEMENT CO., INC.

By: _Martin Goodman_

TIP TOP PUBLICATIONS, INC.

By: _Martin Goodman_

2021MARVEL-0047332

ATTEST:

_____

ATTEST:

_____

ATTEST:

_____

ATTEST:

_____

ATTEST:

_____

ATTEST:

_____

ATTEST:

_____

ATTEST:

_____

ATTEST:

_____

ATTEST:

_____

ATTEST:

_____

ATTEST:

_____

ATLAS NEWS CO., INC.

By: _____

CHIPIDEN PUBLISHING CORP.

By: _____

CORNELL PUBLISHING CORP.

By: _____

EMGEE PUBLICATIONS, INC.

By: _____

GEM PUBLICATIONS, INC.

By: _____

HERCULES PUBLISHING CORP.

By: _____

JAYGEE PUBLICATIONS, INC.

By: _____

MANVIS PUBLICATION, INC.

By: _____

MARGOOD PUBLISHING CORP.

By: _____

MEDALION PUBLISHING CORP.

By: _____

MUTUAL MAGAZINE CORP.

By: _____

PRIME PUBLICATIONS, INC.

By: _____

2021MARVEL-0047333

ATTEST:

_Charles Goodman_

RED CIRCLE MAGAZINES, INC.

By: _____

ATTEST:

_Charles Goodman_

SPHERE PUBLICATIONS, INC.

By: _____

ATTEST:

_Charles Goodman_

TIMELY COMICS, INC.

By: _____

ATTEST:

_Charles Goodman_

20th CENTURY COMICS CORP.

By: _____

ATTEST:

_Charles Goodman_

WALDEN PUBLISHING CO., INC.

By: _____

ATTEST:

_Charles Goodman_

WARWICK PUBLICATIONS, INC.

By: _____

ATTEST:

_Charles Goodman_

WESTERN FICTION PUBLISHING CO., INC.

By: _____

ATTEST:

_Charles Goodman_

MARVEL COMICS, INC.

By: _____