# EXHIBIT 1

Page 1

```
 1
 2     IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF NEW YORK
 3     -------------------------------x
       MARVEL CHARACTERS, INC.,
 4
                  Plaintiff and
 5          Counterclaim Defendant,
 6             vs.                          Case Nos.
                                            1:21-cv-7955-LAK
 7     LAWRENCE D. LIEBER,                  1:21-cv-7957-LAK
                                            1:21-cv-7959-LAK
 8               Defendant and
                 Counter-claimant.
 9     -------------------------------x
       MARVEL CHARACTERS, INC.,
10
                 Plaintiff and
11               Counterclaim Defendant,
12               vs.
       KEITH A. DETTWILER, in his
13     capacity as Executor of the
       Estate of Donald L. Heck,
14
                 Defendant and
15               Counter-claimant.
       -------------------------------x
16     MARVEL CHARACTERS, INC.,
17               Plaintiff and
                 Counterclaim Defendant,
18
                 vs.
19     PATRICK S. DITKO, in his
       capacity as Administrator of the
20     Estate of Stephen J. Ditko,
21               Defendant and
                 Counter-claimant.
22     -------------------------------x
         VIDEOTAPED DEPOSITION OF PATRICK S. DITKO
23                 New York, New York
               Tuesday, February 14, 2023
24                    9:52 a.m.
25     JOB NO. 5697050
```

Page 2

1
2
3
4
5
6
7
8                       February 14, 2023
9                           9:52 a.m.
10
11          Videotaped Deposition of
12      PATRICK S. DITKO, held at the offices
13      of O'Melveny & Myers LLP, Seven Times
14      Square, New York, New York, pursuant to
15      notice, before Jennifer Ocampo-Guzman,
16      a Certified Realtime Shorthand Reporter
17      and Notary Public of the State of New
18      York.
19
20
21
22
23
24
25

Page 21

1
2      and that's how it was.
3           Q.   Meaning that you never discussed
4      your brother's work with him?
5           A.   Right, correct.
6           Q.   Did he ever tell you why he had a
7      rule that what happens in New York stays in
8      New York?
9           A.   Because he was that private.
10          Q.   And did that rule that he applied
11     to your relationship apply to his
12     relationship with the balance of your family?
13          A.   Well, he told that to my mother, my
14     mother relayed it to me, and we -- and then
15     it got through all the kids and everything
16     else; so it was the golden rule.
17          Q.   So it applied to your children as
18     well?
19          A.   Yes.  They were, you know, real
20     young then.
21          Q.   And the same rule applied
22     throughout the duration of your brother's
23     life?
24               MR. TOBEROFF:  Objection, assumes
25          facts.  Objection as to form.

Page 28

Page 28

1
2      getting confusing.  But the questions
3      are really not fair, because I don't
4      have any knowledge, and I already said
5      that.
6            MR. TOBEROFF:  And she's implying
7      that there is no basis, when you say no.
8            MS. LENS:  No, I'm asking
9      questions, as I'm entitled to do.
10           MR. TOBEROFF:  I know what you're
11     doing and it's improper.
12     Q.    You haven't seen any checks from
13     Marvel to Steve Ditko from the 1960s, have
14     you?
15           MR. TOBEROFF:  Objection as to
16     form, lacks foundation.
17     A.    No.
18     Q.    And you haven't seen the backs of
19     any checks from Marvel to Steve Ditko from
20     the 1960s, have you?
21           MR. TOBEROFF:  Objection as to
22     form, lacks foundation.
23     A.    No.
24     Q.    And do you have any evidence that
25     Steve Ditko wasn't paid for the pages that he

Page 29

1
2        pencilled or inked for Marvel?
3            A.    No.
4            Q.    Are you able to proffer any
5    testimony that Steve Ditko wasn't subject to
6    Stanley's editorial supervision?
7                 MR. TOBEROFF:  Object.  Do you
8        understand her question?
9                 THE WITNESS:  No, I don't.
10                MR. TOBEROFF:  Do you understand
11       her questions?
12                THE WITNESS:  No I don't.
13                MR. TOBEROFF:  Do not answer
14       questions that you don't understand.
15       Okay?
16                And again, if you don't have a
17       basis because you don't have personal
18       knowledge, I'd like you to specifically
19       state that, sir.  Is that understood?
20                THE WITNESS:  I'm trying.
21                MR. TOBEROFF:  I would rather --
22       it's not a yes or no question, if you
23       need to state where your answer is no
24       because you don't have knowledge.  And
25       as far as evidence is concerned, you may

Page 31

1
2      supervision?
3           A.   I have no knowledge.
4           Q.   Okay.  Thank you.
5                Do you think you're qualified,
6      Mr. Ditko, to testify on whether Steve
7      Ditko's work for Marvel from 1962 to 1966 was
8      done on a work made for hire basis?
9           A.   I have no idea, no knowledge.
10          Q.   Do you know what it means to, for
11     work to have been made on a work for hire
12     basis?
13          A.   No.
14          Q.   Did you ever discuss with your
15     brother Steve whether his work for Marvel was
16     done on a work made for hire basis?
17          A.   No.
18          Q.   Are you aware that your brother
19     Steve and Jack Kirby overlapped at Marvel for
20     several years?
21               MR. TOBEROFF:  Object as to form.
22     Lacks foundation.
23               You could answer.
24          A.   No.
25               THE VIDEOGRAPHER:  If I could just

Page 72

```
 1
 2         Q.   So you found what's been marked as
 3    Exhibit 100, which is in front of you in an
 4    actual book in your brother's apartment?
 5              MR. TOBEROFF:  Objection as to
 6         form.
 7         A.   I don't where it was.  It was in
 8    another file other than his reference file.
 9    He had other files also.
10         Q.   Did he have a file relating to his
11    work with Marvel?
12              MR. TOBEROFF:  Objection as to
13         form.
14         A.   No, not really.
15         Q.   Did you find any agreement between
16    he and Marvel?
17              MR. TOBEROFF:  Objection as to
18         form.
19         A.   No.
20         Q.   Did you found any agreements
21    between Steve Ditko and DC Comics?
22              MR. TOBEROFF:  Objection as to
23         form.
24         A.   There may have been something
25    there, but I'm not -- I don't really recall.
```

Veritext Legal Solutions
212-267-6868                www.veritext.com                516-608-2400

Page 153

1
2     but -- I would say yes.
3         Q.   Yes, you understood that your
4     brother's estate was worth over a million,
5     correct?
6         A.   Correct.
7         Q.   And does that also help refresh
8     your recollection that each third of the
9     family -- as you said, there's three
10    families -- had received hundreds of
11    thousands of dollars of Steve Ditko's estate
12    at the time of his passing; is that correct?
13              MR. TOBEROFF:  Objection as to
14        form, assumes facts.
15        A.   I don't think -- no, that's not
16    correct.
17        Q.   The monies that you received from
18    your brother's estate, do you -- have you
19    passed any of those monies along to your son
20    Mark?
21        A.   Only expenses from New York, from
22    Johnstown to New York, because he -- yes.
23        Q.   Other than that, has he received
24    any monies from the estate?
25        A.   Mark?

Page 206

```
 1
 2                C E R T I F I C A T E
 3     STATE OF NEW YORK  )
 4                        : ss.
 5     COUNTY OF NEW YORK )
 6
 7              I, Jennifer Ocampo-Guzman, a
 8     Certified Realtime Shorthand Reporter and
 9     Notary Public within and for the State of New
10     York, do hereby certify:
11              That PATRICK S. DITKO, the
12     witness whose deposition is hereinbefore set
13     forth, was duly sworn, and that such
14     deposition is a true record of the testimony
15     given by the witness.
16              I further certify that I am not
17     related to any of the parties to this action
18     by blood or marriage, and that I am in no
19     way interested in the outcome of this
20     matter.
21              IN WITNESS WHEREOF, I have
22     hereunto set my hand this 1st day of
23     March, 2023.
24                    [Signature]
25                    JENNIFER OCAMPO-GUZMAN, CRR, CLR
```

```
                                              Page 207
 1
 2      ------------- I N D E X ----------------
 3      WITNESS             EXAMINATION BY      PAGE
 4      PATRICK S. DITKO      MS. LENS            6
 5                            MR. TOBEROFF      201
 6      -------------- EXHIBITS -----------------
 7      EXHIBITS                                FOR I.D.
 8
         Exhibit 122, Complaint for              94
 9       Declaratory Relief
10       Exhibit 123, Defendant Ditko's         112
         Supplemental Responses and
11       Objections to Plaintiff's Third Set
         of Interrogatories to Patrick S
12       Ditko
13       Exhibit 124, Article                   137
         entitled,"Ditko family working to
14       share Johnstown comics legend's
         story, promote his legacy."
15
         Exhibit 125, Affidavit, Bates Nos.     150
16       2021MARVEL-0070642 through
         2021MARVEL-0070643
17
         Exhibit 126, Photocopies of            197
18       handwritten letters
19                  MARKED FOR RULING
                      PAGE   LINE
20                     26    19
21
22
23
24
25
```